**Robert Earl LOTTIE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 779S200.**

Supreme Court of Indiana.

June 23, 1980.

Rehearing Denied Sept. 3, 1980.

Harriette Bailey Conn [Mrs.], Public Defender, Kurt A. Young, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant, Robert Earl Lottie, was charged in the St. Joseph County Superior Court with rape, a Class B felony, in Count I; robbery, a Class A felony, in Count II; and robbery, a Class C felony, in Count III. The jury returned a verdict of guilty of rape, but not guilty of the robberies. The appellant was subsequently sentenced to a term of twenty years imprisonment by the court.

Appellant presents ten issues for our consideration in this appeal. Six of these issues relate to instructions given, refused, or modified by the trial court. The remaining

issues concern an alleged error of the court in allowing a witness to testify, the sufficiency of the evidence and alleged error in sentencing.

The prosecuting witness, M.D., testified that she was twenty-five years of age. On January 22, 1978, she and a friend went to the Y-Knot Shack. Appellant Lottie came to their table, introduced himself, sat with them, and bought some drinks for them. He then paid for all of them to go into the back room for dancing. M.D.'s friend spent her time with other people. Lottie and M.D. danced and drank together. About 3:00 a. m., they were preparing to leave. M.D. said that Lottie asked her to come to his apartment to "smoke a joint," and she stated that he was going to show her how to play chess. They went through the kitchen and entered his apartment above the Y-Knot Shack. She was sitting at the kitchen table and Lottie was rolling "a joint" when he suddenly said he had bought her all of the drinks for a reason and that he was going to show her what that reason was. He beat her about the face and knocked her to the floor. He picked her up, took her to the bedroom and threw her on the bed where he continued to beat her. He then partially disrobed her and himself and had intercourse with her. Later, two other men came to the apartment and appellant forced M.D. to have intercourse with them. Lottie also had intercourse with her again, on two different occasions. After all of the men had fallen asleep, she was able to get dressed and leave the apartment. M.D. later told the police, her brother, and people at the hospital that she had been raped and beaten by Robert Lottie and identified a photograph of the appellant from several that were shown to her by the police.

Larry Huys, a forensic serologist, testified that M.D.'s panties contained semen and that vaginal swabs evidenced the presence of acid phosphatase, a component of semen. Dr. Luis Salazar examined M.D. at the emergency room of the hospital and said she had massive facial bruises, black and blue eyes, and stated that she told him she was beaten and raped. Several witnesses testified that she was beaten and raped. Several witnesses testified that she showed signs of having been beaten severely about the face and body. Several medical witnesses called by the State testified that evidence of semen and acid phosphatase from seminal fluid was found in the vaginal smears taken from M.D. Stephen Hathaway, a witness for the appellant, testified that he was a physician specializing in pathology at the South Bend Medical Foundation and that he examined one of the slides containing a vaginal smear and that he found no evidence of spermatozoa on that slide.

## I.

■ Among the final instructions given by the court was one which stated:

The term sexual intercourse means an act that includes any penetration of the female sex organ. Proof of emission is not necessary.

Appellant contends that the last line, "Proof of emission is not necessary," is not a part of the definition of rape, but refers to a matter of proof. He argues that the court accordingly usurped the province of the jury and unduly emphasized one element of evidence by including that line.

This instruction followed others in which the court had instructed the jury on the statute describing the crime of rape and on the elements that the State must prove to carry its burden. It was not necessary for the trial court to add the last line to this instruction; but neither was it improper or erroneous for it to do so. In *Lynch v. State*, (1974) 262 Ind. 360 at 364, 316 N.E.2d 372 at 375, we emphasized that "penetration, not ejaculation, is the essential element of the crime of rape. The presence or absence of spermatozoa in the victim's vaginal area is, of course, not determinative of penetration." However, the above instruction is a correct statement of the law in Indiana. The sentence in question concerns an element of proof pertinent to the facts and the definition of rape which the jury must understand in arriving at its determi-

nation of whether or not the elements of rape have been proved by the evidence beyond a reasonable doubt. There was no error in the giving of this instruction.

## II.

■ Appellant also objects to the instruction given by the court which read:

A person may be found guilty of the crime of rape upon the uncorroborated testimony of the victim.

This instruction accurately recites the law in Indiana as we have confirmed it to be many times. *Harris v. State*, (1978) 373 N.E.2d 149; *Beard v. State*, (1975) 262 Ind. 643, 323 N.E.2d 216; *Lynch v. State*, (1974) 262 Ind. 360, 316 N.E.2d 372.

■ Appellant claims that this is an incomplete statement of the law and that it invites the jury to give undue weight to the testimony of the victim since it does not advise the jury that the uncorroborated testimony of the victim would be sufficient only if it is adequate to convince any rational trier of fact that the defendant committed the essential elements of the crime charged beyond a reasonable doubt. The appellant is correct, of course, in stating that the jury should consider the evidence in this manner. However, it is also true that instructions are not to be considered as disjointed statements or principles but are to be considered as a whole and are to be read together. *Henderson v. State*, (1979) Ind., 395 N.E.2d 224; *Tewell v. State*, (1976) 264 Ind. 88, 339 N.E.2d 792. The jury was fully instructed as to all of the elements that must be proved beyond a reasonable doubt before the defendant could be found guilty and the burden of proof the state must carry throughout the entire cause. They were instructed on the presumption of innocence of the defendant and given a definition and explanation of reasonable doubt. They were instructed on the credibility of witnesses and the weight to be given to the testimony of each witness. Instructions were given on the manner in which they were to deliberate and to determine the facts and the law. They were instructed that there is no burden on the defendant to prove anything, and that the fact that he fails to prove or disprove anything cannot be used in any manner to determine his guilt.

The instruction given was not a mandatory instruction that advised the jury that they must act or respond in a certain way. It was merely an explanation of the law in an area which likely would not be understood by lay people. There was no error in the giving of this instruction.

## III.

The trial court gave the following instruction to the jury:

It is not the law of this State that a woman assaulted with an intent to commit rape upon her is required to resist by all violent means within her power. The law requires only that the case be one in which the woman did not consent. Her resistance must not be mere pretense but in good faith. The law does not require that the woman shall do more than her age, strength, and all attendant circumstances make it reasonable for her to do in order to manifest her opposition. The question of resistance is a question of fact for you to determine and find and not a question this court can decide.

Appellant claims that since the defense of consent was not raised in this case, this instruction could do no more than emphasize the fact that M.D. had been beaten and was thereby induced to have sexual intercourse against her will by reason of the physical abuse.

■ Even though a defense of consent was not offered, an element of the crime of rape is that the carnal knowledge of the woman must be had against her will and consent, that is, it must be compelled by force or imminent threat of force. There was ample evidence here that M.D. had been beaten and that acts of sexual intercourse had been performed upon her. Evidence of violence was also presented by the existence of lesions in her vaginal area. It was proper for the court to instruct the jury on consent so that they might properly deliberate on the evidence before them. In

addition, this instruction was expressly approved in *Rahke v. State*, (1907) 168 Ind. 615, 81 N.E. 584, and reaffirmed in the cases of *Ritter v. State*, (1946) 224 Ind. 426, 67 N.E.2d 530 and *Thomas v. State*, (1949) 227 Ind. 42, 45, 83 N.E.2d 788. There was no error in the giving of this instruction.

### IV.

In preliminary and in final instructions, the trial court gave the following instruction:

You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the memory, manner and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in the case.

You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. However, if you find that the testimony of a witness is so unreasonable as to be unworthy of belief, or if you find so much conflict between the testimony of witnesses that you cannot believe all of them, then you must determine which of the witnesses you will believe and which of them you will disbelieve.

In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. You may find that the number of witnesses who testify to a particular fact, on one side or the other, or the quantity of evidence on a particular point does not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

Appellant objected to the giving of this instruction and tendered three of his own instructions which covered the same areas as the instruction given by the court. Two of appellant's instructions were substantially word for word of the instruction given with the exception of a portion of one sentence to which he objects here. He objects to the portion stating, "and the theory that every witness is telling the truth," in the second paragraph. Appellant claims that it was improper to tell the jury that they should presume at any time that every witness is telling the truth.

■ We see no prejudicial error in the language of this instruction. We recognize it as one commonly and generally given by trial judges in criminal cases. It simply tells the jury that they are to test the evidence as they hear it so that they may then fit that evidence to the presumption that the defendant is innocent. They are told to determine if the State has carried the burdens it must carry as outlined in other instructions. This instruction also tells the jurors that they are exclusive judges of the evidence and the credibility of the witnesses and the weight to be given the testimony of each of them. It tells them how to weigh the testimony of each juror and what they are to do in the event they find that one witness' testimony is not worthy of belief. If there is conflict between the testimony of witnesses, they are told how to resolve that conflict by deciding which of the witnesses, they will believe and which they will disbelieve. This instruction adequately covered the substance of the appellant's tendered instructions. It was not error for the court to refuse those instructions. *Bricker v. State*, (1976) 264 Ind. 186, 341 N.E.2d 502; *Vacendak v. State*, (1976) 264 Ind. 101, 340 N.E.2d 352; *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770.

### V.

■ Defendant tendered an instruction which read as follows:

The defendant is a competent witness in his own behalf, and you have no right to disregard his testimony to any extent, or to look upon his testimony with suspicion or disfavor merely because he is the defendant. His testimony should be taken, considered and weighed by you the same as that of any other witness in this case, and if you have no reason to disbelieve him other than the fact that he is the defendant, then you must treat his testimony as that of any other witness.

The court modified this instruction to read as follows:

The defendant is a competent witness in his own behalf. His testimony should be taken, considered and weighed by you the same as that of any other witness in this case.

A similar instruction has been approved by this Court in *Taylor v. State*, (1976) 265 Ind. 433, 355 N.E.2d 247. Appellant admits it was proper for the court to instruct the jury on the competency of defendant as a witness, but claims that he had a right to have the additional language given that the court deleted from his tendered instruction.

■ We said in *Taylor, supra*, "We believe that juror confusion as to the proper consideration of testimony by the accused is likely in the absence of any instruction. Some jurors may receive such testimony with extreme distrust, others may tend, having been instructed that the defendant is presumed innocent, to believe that his testimony must be presumed true. An instruction on the credibility of witnesses in general will be ineffective in this regard unless the jury realizes that a testifying defendant is a witness like any other." *Taylor, supra*, 265 Ind. at 438–39, 355 N.E.2d at 251. We said that, therefore, it was proper for the court to give this instruction to the jury although the court was not required to give it. We reaffirm our language in *Taylor*, and thus find that the court properly instructed the jury here. However, it would have been improper for the court to editorialize further and to suggest to the jury reasons why they should or should not believe the defendant's testimo-

ny or consider it in any different light than that of any other witness. For the court to suggest to the jury that they especially consider the appellant's unique interest in the case would be to subject his testimony to a different and harsher rule than that applied to witnesses generally and would be error. *Taylor, supra; Alder v. State*, (1958) 239 Ind. 68, 154 N.E.2d 716; *Swanson v. State*, (1943) 222 Ind. 217, 52 N.E.2d 616.

### VI.

The appellant tendered an instruction which read:

While you are entitled to draw reasonable inferences from the evidence, you are not to understand from the instructions given to you that you must draw certain inferences.

The court modified this instruction and gave its own instruction as follows:

You are entitled to draw reasonable inferences from the evidence.

■ Appellant claims that without the additional language he requested the jury may make the interpretation that the court is ordering them to draw inferences. He argues that if the jury is told that they may draw reasonable inferences, they should also be told that they are not required to do so. We see no merit in this argument. The instruction given was not misleading or mandatory, and was proper under the law. *See Jacks v. State*, (1979) Ind., 394 N.E.2d 166; *Dedrick v. State*, (1936) 210 Ind. 259, 2 N.E.2d 409.

### VII.

■ Prior to the testimony given by the victim, Police Officer Bill Wells testified over objection that he showed the victim five photographs and that she picked out the appellant from these photos. Appellant's hearsay objection was overruled and he claims that he was denied his right of confrontation. The victim, M.D., subsequently testified at trial. She testified at length and in detail as to her identification of Lottie and was subject to cross-examination. Appellant is, of course, correct in his

observation that this was hearsay evidence. However, we fail to see how appellant's right of confrontation was denied, since M.D., was in the courtroom, did take the stand and did testify. *Brown v. State,* (1979) Ind., 390 N.E.2d 1000; *Buttram v. State,* (1979) Ind., 382 N.E.2d 166. There is no error on this issue.

### VIII.

█ Appellant contends that the evidence was insufficient to support the verdict based on the fact that the prosecuting witness was the only one who identified him as being the one who beat and raped her. All other facts were corroborated. Appellant admitted that he was in her company at the Y-Knot Shack. Other witnesses saw them together and other witnesses corroborated the facts that she had been severely beaten, that she had been involved in sexual intercourse and that some violence was involved in the encounter. No issue is raised concerning her testimony regarding the identification processes, but appellant questions her credibility because the evidence revealed that she was in shock, that at one point she was given a tranquilizer, that she had been drinking and was light headed, and that she allegedly passed out after the beating. He calls our attention to the fact that she did not immediately call the police or seek medical help, but went to the home of her cousin where she slept for a while, and then later contacted her brother who took her to seek medical and police assistance. These comments only point to facts in the evidence which present areas of credibility for the jury to determine. They do not present to us an issue regarding sufficiency. The victim was with the defendant throughout the evening at very close range. She was able to identify him and give his name. Her testimony was unequivocal as to his identity and as to the acts of intercourse without her consent. She picked out a picture of him without hesitation. It is well settled law in Indiana that the uncorroborated testimony of the victim is sufficient to prove the crime of rape. *Dobrzykowski v. State,* (1978) Ind., 382 N.E.2d 170; *Harris v. State,* (1978) Ind., 373 N.E.2d 149.

### IX.

Appellant also raises the sufficiency of the evidence as an issue based on the testimony of Dennis Johnson, which appellant presents as newly discovered evidence. Trial of this cause was concluded on January 23, 1979. A motion to correct errors was filed on April 16, 1979, and overruled on May 3, followed by a praecipe filed for appeal to this Court, on May 23, 1979. Due to several extensions granted by this Court, the record was not filed until December 31, 1979. However, on November 2, 1979, appellant filed a motion for relief from judgment with the trial court pursuant to Ind.R. Tr.P. 60(B)(2) based on the newly discovered evidence of the testimony of Dennis Johnson. The trial court heard the Ind.R. Tr.P. 60(B)(2) motion, denied it and also denied a motion to correct errors directed to his ruling. Appellant subsequently was granted the right to file a supplemental record of proceedings of the 60(B)(2) motion, denial, motion to correct errors and denial.

█ The State contends that the Ind.R. Tr.P. 60(B)(2) motion is a remedy to be used in civil actions, citing *Logal v. Cruse,* (1977) 267 Ind. 83, 368 N.E.2d 235, and that the proper procedure here would have been for the appellant to proceed under the post-conviction relief rules. We agree. This Court has provided for procedures such as this under Ind.R.P.C. 1. *Davis v. State,* (1977) 267 Ind. 152, 368 N.E.2d 1149. The procedure would have been much the same under either rule, and since the same question would have been presented to the trial court and to this Court in the way in which it is presented here now, we will decide this issue.

█ The test for considering the weight to be given to newly discovered evidence was set out by us in *Emerson v. State,* (1972) 259 Ind. 399, 287 N.E.2d 867, as follows:

"An application for a new trial, made on the ground of newly discovered evi-

dence, must be supported by affidavit and such affidavit or affidavits must contain a statement of the facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result."

There was evidence that appellant's trial attorney had attempted to find Johnson at some time prior to the trial and had difficulty in getting him to respond to attempts at contact. There was further evidence that Johnson himself had talked to appellant's attorney during the time this cause was pending, but did not discuss the subject with him. Be that as it may, Johnson did come forward at this time and offered his testimony to be that he was sitting in his car at the Y-Knot Shack about closing time on the night in question. He said he saw the victim come out of the Y-Knot Shack alone, talked to her very briefly and got the impression that she was leaving. He said he then saw her going toward the parking lot alone. That would be the extent of his testimony. It is the contention of the appellant that, this testimony would corroborate the defendant's testimony that he did not leave the Y-Knot Shack with the victim and did not see her that night except inside of the Y-Knot Shack. There was evidence that the appellant knew Johnson had made these statements prior to trial, so his argument, that the evidence had been discovered since the trial and that due diligence was used to discover it and make an effort to present it at trial, was quite weak. Furthermore, it appears that the trial court was justified in finding that this evidence was no more than impeaching of the victim's testimony. Johnson testified he saw the victim for a very short time and then drove away. As the State points out, even accepting his testimony and putting it with the other evidence, the victim could have

returned to the tavern immediately after he left, met the defendant and left with him as she has stated she did. It does not have such weight that we could conclude that it probably would produce a different result if presented to the jury. We cannot, therefore, say that the trial judge erred in denying the 60(B)(2) motion, nor can we say that it so depreciates the sufficiency of the evidence that appellant's conviction must be set aside. *Emerson v. State, supra.*

## X.

Finally, appellant complains that the trial judge, at the sentencing hearing, considered matters that were improper in arriving at a final sentence. He complains that the trial judge considered a juvenile record, charges which either had been dismissed or had resulted in an acquittal, improper statements and references by the probation officer in his pre-commitment report to the court, and consideration of the appellant's school life and academic achievements. We have specifically held in *Jewell v. State,* (1974) 261 Ind. 665, 309 N.E.2d 441, that the sentencing judge can consider juvenile offenses, as they are the history of a person's delinquency, and this consideration is provided for by Ind.Code § 35–50–1A–10 (Burns 1979 Repl.). We held in *Misenheimer v. State,* (1978) Ind., 374 N.E.2d 523, that charges which were dismissed or resulted in acquittals were part of the criminal history and, therefore, proper for the court to consider at sentencing. In *Halligan v. State,* (1978) Ind.App., 375 N.E.2d 1151, the Court of Appeals held that the pre-sentence investigation and report may include any matter which the probation officer deems relevant to the question of sentence. These matters obviously could be in favor of or against the defendant and are presented in the report as a finding or an opinion of the probation officer. The defendant is, of course, given the opportunity to rebut any and all of these matters. Further, it is proper for the court to consider, in sentencing, appellant's school life and academic achievements. *Hineman v. State,* (1973) 155 Ind.App. 293, 292 N.E.2d 618. The United States Supreme Court has stated that it is essential

for a sentencing judge to be as well informed as possible concerning the defendant's life and characteristics in order to select an appropriate sentence. The Court further stated that ". . . modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." *Williams v. New York*, (1949) 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1343.

Here the trial court made the following findings:

"The Court, pursuant to Indiana Code, has considered all of the facts and circumstances and criteria for sentencing as set out in said Indiana Code and imposes the above sentence for the following reasons:

1. The Court is unable to find any mitigating circumstances in regard to the imposition of this sentence and many aggravating factors including the violence exerted by defendant in commission of the crime which he was found guilty of by the jury.

2. There is an extreme risk that the defendant will commit further crimes.

3. Defendant has a prior criminal record involving the use of weapons and violence.

4. The character and condition of defendant is such that he needs the corrective and hopefully rehabilitative treatment of sentencing. The Court notes the defendant's age of twenty-four years and a continuous record of involvement with the law since defendant was ten years old.

The Court further finds that the ultimate consideration in the sentencing of defendant at this time should be the protection of society from the possible violent acts of the defendant."

We, therefore, find the trial court properly sentenced the defendant.

The trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.