George HALL, Appellant,

v.

STATE of Indiana, Appellee.

No. 979S259.

Supreme Court of Indiana.

Dec. 12, 1980.

Harriette Bailey Conn, Public Defender, James G. Holland, Deputy Public Defender, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Jeffrey K. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was convicted by a jury of first degree murder and carrying a handgun without a license. He was sentenced to fifteen to twenty–five years in prison on the murder charge and six months on the firearms violation. The convictions were affirmed on direct appeal to this Court in *Hall v. State*, (1978) Ind., 378 N.E.2d 823. Appellant then filed a petition for post–conviction relief alleging several grounds, but at the hearing only one ground, ineffective assistance of counsel, was argued. This is an appeal from the denial of post–conviction relief.

Appellant raises one issue on appeal: "[W]hether the Findings of Fact and Conclusions of Law filed by the trial court wherein the court found that Petitioner–Appellant's trial counsel was competent and effective are contrary to law and the evidence." The underlying claim is that trial counsel's failure to call two witnesses who would have impeached the testimony of two key witnesses for the prosecution deprived appellant Hall of his constitutionally guaranteed right to effective assistance of counsel.

In a proceeding for post–conviction relief, the petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence. Ind.R.P.C. 1, § 5. In order to prevail on appeal from a denial of his petition, "appellant must satisfy the Court that the evidence as a whole was such that it leads unerringly and unmistakably to a decision in his favor; that is, one opposite to that reached by the trial court." *Sotelo v. State*, (1980) Ind., 408 N.E.2d 1215.

In the direct appeal, we reviewed a claim of insufficiency of the evidence and made the following summary and conclusion:

"Looking to the evidence most favorable to the State, it appears that on December 7, 1974, the defendant walked into Robby's Lounge in Indianapolis, Indiana. The owner of the lounge was stationed by the entrance to collect the cover charge. The defendant told her that he wanted only to use the restroom, so she allowed the defendant to enter.

"Witness, Williams, testified that the defendant offered to sell a nickel plated handgun to him while they were both in the lounge's restroom, but he refused to buy it. As Williams left the restroom, the defendant followed him out. Williams approached the deceased at the bar. As Williams was talking to the deceased, the deceased called him a 'jitterbug punk,' and pushed him away. Someone standing behind Williams then shot the deceased.

"Robinson, the owner of the lounge, testified that after the defendant had been admitted without paying the cover charge, she saw him talking to two men by the restroom. She asked them to clear the doorway, and they moved to stools at the bar. Robinson looked again and saw the defendant draw a handgun and fire it at the deceased. She started to follow the defendant as he walked away. Defendant turned to face her, pointed a gun at her, and told her to stay out of it.

\* \* \* \* \* \*

"Defendant further argues that there was no credible evidence to identify him as the assailant. Both Robinson and Williams identified the defendant as being present at the scene and in possession of a handgun. Robinson unequivocally identified the defendant as the individual who fired the fatal shot. This is substantial evidence of probative value which was accepted as credible by the jury. On questions concerning the credibility of witnesses, this Court will not substitute its judgment for the judgment of the jury." *Hall v. State, supra,* at 826, 827.

At the hearing on the petition for post-conviction relief, appellant, George Hall, testified that prior to the criminal trial he told his trial counsel, Timothy Burns, that he wished to have Samuel Hall (his brother) and Reginald Belcher called as witnesses on his behalf at the trial. He said that he expected these two men to be called as witnesses, and when neither was called, he questioned Burns about his failure to call them. After the trial, Hall testified, Burns told him that "he felt that [Samuel] Hall wouldn't be no good, or something like that." As to Belcher, appellant testified that Burns "said that what Belcher was gonna testify would be, he felt that [witness] Williams had contradicted himself several times or something, and said that he didn't feel that it was needed to call him."

Samuel Hall testified that he was available and willing to testify at his brother's trial, and that he had discussed testifying with Burns. He further stated that he would have testified to the following. He was in Robby's Lounge on the night of the murder, but George Hall was not there. Within minutes of the shooting, he was arrested for the crime. Three people from the tavern, Williams, Robinson and Miller, identified him as the one who did the shooting.

Reginald Belcher testified that he, too, had discussed testifying with Burns, and that he was available and willing to testify. His testimony would have been the following. A few days after the murder, he was in Robby's Lounge. He overheard Williams state that George Hall was not the person who tried to sell him a pistol on the night of the shooting.

Timothy Burns, the trial counsel, testified that he had talked to Samuel Hall and Belcher about their respective potential testimony two times before George Hall's criminal trial. He said that in each case he made a judgment that they should not be called as witnesses, and that as the trial proceeded, he "probably" had a conversation with George Hall in which he said that he would call Samuel Hall and Belcher if George insisted, but that in his opinion it would be a mistake to do so. Burns said that he felt that Belcher would have made a poor appearance as a witness because he

had four or five convictions, and that his testimony was not needed because "the record was in the posture that he would add nothing and perhaps distract from George."

Concerning the failure to call Samuel Hall, Burns admitted that his memory was hazy, but said that "for [George Hall] to be pointing the finger at brother Sam, in an attempt to extricate himself, would blow up in his face. . . . I felt it would be a poor strategy." He also testified that it would have been a mistake to call Samuel Hall because "Sam Hall still had potential liability to be charged with murder since several of the witnesses supposedly claimed that Sam held the gun on some people while George left. . . . Well, I was aware that that might surface if Sam was called as a witness, and I felt that would be a bad thing. . . ."

Appellant argues that he was convicted, and the conviction was affirmed, on the basis of the identification testimony of State's witnesses Williams and Robinson. Defense counsel's failure to call witnesses Samuel Hall and Belcher, appellant argues, deprived him of an invaluable opportunity to impeach each of the State's key witnesses. The testimony of Samuel Hall would not only have served to undermine and destroy Robinson's in-court identification, but would also have "undermined her basic credibility as well", appellant argues. Belcher's testimony "would have destroyed [Williams'] credibility and seriously eroded the State's case."

These conclusions, we note, are purely speculative, assuming, as they do, that the jurors would have believed the proffered testimony. The trial court made a finding of fact that "trial counsel was competent and experienced and that the failure to call witnesses as specified in the post-conviction hearing was trial strategy and tactics." His conclusion of law was that "Petitioner did not sustain his burden of proof as to any allegations."

On reviewing the post-conviction proceeding in the light described at the outset of this decision, we cannot say that the evidence as a whole led unerringly to a conclusion opposite to that reached by the trial court. The finding of fact is amply supported by evidence that the decision not to call the witnesses was sound trial strategy. There is a presumption that counsel has been competent and it takes strong and convincing evidence to overcome this presumption. *Magley v. State*, (1975) 263 Ind. 618, 335 N.E.2d 811. Appellant made no showing that the failure to call certain witnesses was anything other than a strategy decision, and we have said many times that we will not second guess such a decision. *Herman v. State*, (1979) Ind., 395 N.E.2d 249. We affirm the judgment of the trial court.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.