George Lynn TAYLOR, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 581S134.

Supreme Court of Indiana.

Aug. 10, 1982.

Susan K. Carpenter, Public Defender, M. E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Rape, Ind.Code § 35–42–4–1(a) (Burns 1979), Criminal Confinement, Ind.Code § 35–42–3–3(a) (Burns Supp.1982), and Criminal Deviate Conduct, Ind.Code § 35–42–4–2(a) (Burns 1979) and sentenced to a total of forty (40) years imprisonment. This direct appeal presents the following issues:

(1) Whether the convictions for Rape and Criminal Deviate Conduct as Class A felonies were sustained by the evidence.

(2) Whether the trial court erred in allowing witnesses to testify that Defendant had killed his mother.

(3) Whether the trial court erred in giving State's Instruction No. 4 advising that one could be convicted of rape upon the uncorroborated testimony of the victim, providing each element was thereby proved beyond a reasonable doubt.

(4) Whether Defendant was denied his right to the effective assistance of counsel.

\*     \*     \*     \*     \*     \*

## ISSUE I

At about 9:00 p. m. on April 11, 1980 the prosecutrix approached her automobile in the parking lot of Scottsdale Mall in South Bend. As she was about to close the car door, Defendant, who earlier had made a passing comment about the weather, forced his way into the car and brandished a knife. Defendant then drove the vehicle to a garage near a farmhouse, where he ordered the prosecutrix "to please come out of the car with him and to please bring my packages * * *." Once inside the farmhouse Defendant performed cunnilingus on the prosecutrix and raped her twice.

Defendant contends that the evidence does not support convictions for Rape, Class A felony and Criminal Deviate Conduct, Class A felony. He argues that the prosecutrix testified that once they were inside the farmhouse she never saw a knife and that he never threatened her with a knife. He asserts that there was, consequently, no evidence to prove that the Rape and Criminal Deviate Conduct were carried out by using or threatening the use of deadly force or while armed with a deadly weapon.

The prosecutrix testified that she had been to a class on Rape defense and had learned that it was safer for a woman confronted by a man with a knife to remain passive, in order to escape serious injury or death.

"A. Yes, I also learned that most men who rape have something against women due to their background and knowing some background about this man and the fact that he was forcing me to do as he said *because he had a knife,* * * *." (R. at 163) (emphasis added)

On cross-examination the prosecutrix stated:

"A. No, *but he had a knife* and I was afraid of what he'd do if I didn't do as he said." (R. at 209) (emphasis added).

She also testified that she saw the knife the entire time that she and Defendant were in her car, and that she did not see it after they were in the farmhouse, but that Defendant did not "throw the knife away," "pitch it" or "discard it."

The evidence demonstrates that the knife was intended to intimidate the victim and that it accomplished that result. To sustain a conviction for a Class A felony, it is not necessary that the weapon be held on the victim of a sex crime at all times. *Dean v. State,* (1980) Ind., 398 N.E.2d 1270, 1272. From the prosecutrix's testimony the jury could infer that Defendant, who had had the knife while in the automobile, still had control of it while inside the house. *See Deel v. State,* (1976) 265 Ind. 577, 581, 357 N.E.2d 240, 242. We find that the evidence was sufficient to sustain the convictions for Rape, Class A felony, and Criminal Deviate Conduct, Class A felony. *See Critchlow v. State,* (1976) 264 Ind. 458, 466–67, 346 N.E.2d 591, 597.

## ISSUE II

Defendant next contends that the trial court erred in allowing four (4) witnesses to testify that he had killed his mother. He argues that the prejudicial effect of this evidence far outweighed its probative value and that the State repeatedly resurrected the issue solely to prejudice him.

The homicide was first mentioned by the prosecutrix on direct examination. She testified that before the second act of Rape, Defendant told her "he had been to prison before for second degree murder of his mother; that he tried to kill his brother, but his mother came between them and that he had accidentally killed her."

In his memorandum denying the motion to correct errors, the trial judge ruled as follows:

"There are at least three separate bases for the admission of this evidence. First, it was a part of the *res gestae.* Second, the statement is readily construed as a threat that he had killed once and would not hesitate to do so again and was therefore admissible on the question of whether her submission to the sexual acts was compelled. Third, the evidence was admissible on the identity of the defendant as the perpetrator of the crime since most of us do not have that unique experience in our backgrounds." (R. at 84)

█ Statements uttered by the accused during the commission of the offense charged, including prejudicial comments about his prior prison record, are admissible as part of the res gestae of the offense. *Roddy v. State*, (1970) 254 Ind. 50, 53, 257 N.E.2d 816, 818. Additionally, as we explain below, the statement was admissible upon the issue of the identity of the assailant.

█ The homicide was mentioned a second time by a police officer who had interviewed the prosecutrix. His notes reflected that he had been told that her assailant had stated that he had killed his mother. Defendant objected upon the ground that the inquiry was "beyond the scope of cross examination." The trial court's denial of this objection is not assigned as error in the motion to correct errors, thus rendering the ruling unavailable for review. *Guardiola v. State*, (1978) 268 Ind. 404, 405, 375 N.E.2d 1105, 1107.

On direct examination the Prosecutor asked Defendant's ex-wife if Defendant had ever killed his mother. Defendant objected upon the ground that the prejudicial impact of the statement outweighed its probative value. The trial court admitted the evidence, for the limited purpose of establishing identity and invited Defendant to offer a limiting instruction, which Defendant did not subsequently tender.

█ "Generally evidence of criminal activity other than that charged is inadmissible on the question of guilt. However, such evidence may be admitted to show intent, motive, purpose, identification, or common scheme or plan." *Cobbs v. State*, (1975) 264 Ind. 60, 62, 338 N.E.2d 632, 633.

█ We agree with the trial court. The prosecutrix testified that her assailant had stated that he had been in prison for killing his mother. That Defendant had indeed killed his mother tended to prove, circumstantially, that he and the assailant were one and the same.

█ The last mention of the Defendant's murder conviction came on cross examination of the defendant, as a proper method of impeaching his credibility. *Beasley v. State*, (1977) 267 Ind. 396, 402, 370 N.E.2d 360, 363; *Grooms v. Fervida*, (1979) Ind. App., 396 N.E.2d 405, 411. We find no error in the admission of this evidence.

## ISSUE III

█ Defendant contends that the trial court erred in giving the following instruction:

"A person may be found guilty of the crime of rape upon the uncorroborated testimony of the victim provided such uncorroborated testimony proves beyond a reasonable doubt each and every element of the crime of rape."

He argues that the instruction is misleading, unduly emphasizes certain facts, and gives undue weight to the victim's testimony.

In *Lottie v. State*, (1980) Ind., 406 N.E.2d 632, 636 we rejected a similar complaint with respect to the following instruction:

"A person may be found guilty of the crime of rape upon the uncorroborated testimony of the victim."

In *Lottie* we noted that the instructions must be considered as a whole. Here, as in *Lottie*, the jury was instructed upon the elements of the offense charged, the State's burden of proof throughout the case, the defendant's presumption of innocence, the credibility of witnesses, and the manner in which they were to deliberate to reach a verdict. We find no error in the giving of this instruction.

## ISSUE IV

█ Lastly, Defendant contends that he was denied the effective assistance of counsel. Specifically at the hearing on the motion to correct errors, Defendant testified that his counsel should have called three witnesses, Leo Mangus, Elmer Halt, and Joyce Halt, who would have substantiated his defense, and that his counsel should have more thoroughly cross examined his ex-wife, who would have been able to corroborate part of his testimony.

At the hearing Defendant called the three aforementioned witnesses. His ex-wife was in Montana, and while she may have been served with a subpoena, she did not appear or testify.

The trial court filed a memorandum in support of his denial of the motion to correct errors, which explains that defense counsel's asserted failings were clearly tactical.

Leo Mangus, the brother of Defendant's ex-wife, testified that on April 11, 1980 he had worked with Defendant all day and had dropped Defendant off at Washington and Williams Streets in South Bend at 5:00 p. m. At trial Defendant had testified that he had gone to the Scottsdale Mall at 3:30 p. m. on April 11, 1980. The two witness' stories are not in accord.

Mr. and Mrs. Halt, Defendant's neighbors, testified that they had met Defendant at the Scottsdale Mall at 8:00 p. m. on April 11, 1980 and offered to meet him at 9:00 p. m. in order to give him a ride home. Defendant accepted the invitation but did not show up at 9:00 p. m. The testimony of these witnesses places Defendant at the scene of the crime one hour before the abduction of the prosecutrix. Apparently Defendant wanted the Halts to relate that he was wearing a two piece blue denim leisure suit; however, they could not remember exactly what he had worn. Mr. Halt testified that the "top" and "the bottom part" matched and that he thought it was blue denim. Mrs. Halt could not remember what the defendant had worn, but she thought it was blue denim. Additionally, the record supports the trial court's finding that the prosecutrix gave no description of her assailant's clothing at trial.

Lastly, the trial court found that defense counsel did not extensively cross examine Defendant's ex-wife because he was aware of the couple's marital difficulties and that she had just divorced Defendant shortly before the trial.

The record amply supports the trial court's finding that defense counsel's conduct, with respect to these witnesses, was tactical. Counsel's strategy and tactics con-

cerning a decision to call or not to call a particular witness will not be second guessed by this Court. *Hall v. State*, (1980) Ind., 413 N.E.2d 262, 264.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.