**Tracey A. YOUNG, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 71S00–9702–CR–158.**

Supreme Court of Indiana.

June 29, 1998.

**388**

Anthony V. Luber, South Bend, for Appellant.

Jeffrey A. Modisett, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

A jury found appellant Tracey A. Young guilty of burglary, a class B felony;[1] two counts of attempted murder, class A felonies;[2] and murder, a felony.[3] The jury also

found him to be a habitual offender.[4] The trial court imposed a sentence of one hundred ninety-five years.

On direct appeal, Young now raises four issues:

I.  Whether a 911 emergency call was authenticated;

II.  Whether the court erred by allowing a child victim to show her wounds on the witness stand and by admitting a photograph of that child at the crime scene;

III.  Whether several of the jury instructions were erroneous; and

IV.  Whether the sentenced was manifestly unreasonable.

### Facts

The evidence presented at trial shows that, on October 23, 1995, a 911 emergency dispatcher in South Bend received a call at approximately 10:56 p.m. When no voice was heard, he checked his caller identification system which listed the name of Allison Garner, her address at 1610 Dunham Street in South Bend and her telephone number.

The dispatcher then dialed Garner's residence and reached the answering machine. He stated that an officer would be sent if the phone was not answered, and a female voice answered the phone. The woman frantically screamed something about her children and the name "Tracey." The dispatcher also heard a man's voice in the background and the sound of breaking glass.

Minutes later, South Bend Police Officer Scott Ross arrived at 1610 Dunham Street. Upon noticing the front door open and its glass shattered, he entered the house and found Allison Rochelle Garner and her children, Kenneth Garron and Allison Latifah Garner, lying on the living room floor covered in blood. Kenneth was crying for help and Allison Latifah was kneeling by her unresponsive mother. Kenneth said that a man named "Tracy" shot all three of them.[5] Al-

---

1.  Ind.Code Ann. § 35–43–2–1 (West 1998).

2.  Ind.Code Ann. § 35–41–5–1 (West 1998); Ind.Code Ann. § 35–42–1–1 (West 1998).

3.  Ind.Code Ann. § 35–42–1–1 (West 1998).

4.  Ind.Code Ann. § 35–50–2–8 (West 1998).

5.  It is unclear whether Kenneth stated that the shooter was "Tracey Young" or "Tracey Jones." Although Kenneth testified that he said "Tracey

though the two children survived their wounds, their mother died from a gunshot wound to the abdomen.

Officer Charles Eakins, an evidence technician, arrived at approximately 11:30 p.m. He recovered fingerprints from the broken glass of the front door and from a book shelf in the living room. These fingerprints belonged to Tracey Young. Officer Eakins also found four casings and two bullets that were fired from the same gun.

## I. Authentication of 911 Call

Young claims that the trial court erred in admitting the recorded 911 call between an emergency dispatcher and Allison Garner. He says the call was not properly authenticated under Indiana Rule of Evidence 901. We disagree.

Generally, the identities of both parties must be authenticated before admitting a telephone call. *King v. State*, 560 N.E.2d 491, 494 (Ind.1990). A caller's identity can be established by circumstantial evidence, and need not be proven beyond a reasonable doubt. *Lock v. State*, 567 N.E.2d 1155, 1158 (Ind.1991) (citing *Reed v. State*, 491 N.E.2d 182, 186 (Ind.1986)), *cert. denied*, 503 U.S. 991, 112 S.Ct. 1686, 118 L.Ed.2d 400 (1991); *Ashley v. State*, 493 N.E.2d 768, 774 (Ind.1986).

A telephone call to a 911 system may not always require such authentication where the point of submitting it as evidence is not really to establish the identification of the caller. Here, the point was largely to demonstrate where the call originated and how the police discovered the crime scene. The foundation here was adequate for that purpose.

In this case, the identity of Allison Garner as the caller can be established by several circumstances surrounding the call. The dispatcher testified that he received a non-responsive call on October 23, 1995. His caller identification equipment listed Allison Garner's name, phone number, and address. He then dialed that number and a woman answered the phone. The voice frantically screamed something about her children and

the name "Tracey." He also heard a man's voice and breaking glass. When police arrived moments later, they found three victims and broken glass on the front door. One of these victims was indeed Allison Garner. Considering this evidence, the state sufficiently authenticated the fact that Allison Garner was the woman who answered the phone.

## II. Demonstration of Child's Wounds and Photograph

Young also objects to the display of Allison Latifah's wounds on the witness stand and admittance of a photograph showing that child at the crime scene. He contends this evidence was cumulative and prejudicial, and thus should not have been admitted.

Appellant cites *Stone v. State*, 536 N.E.2d 534 (Ind.Ct.App.1989) for the proposition that evidence should be excluded if it induces jurors to decide cases on an improper basis, usually an emotional one. *Id.* at 539 (citing *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir. 1986)).

We agree that courts must be cautious of inflammatory and cumulative evidence that impermissibly sways the jury. In this case, however, after careful consideration, the trial judge approved the display and cited *Wolfe v. State*, 562 N.E.2d 414 (Ind.1990) for the proposition that young children could be used to illustrate testimony concerning their injuries, if their age prevents them from testifying. *Id.* at 420–21. Although the photograph of the child adds to the cumulative effect, we are not persuaded that it was so prejudicial as to improperly influence the jury. We find no reversible error.

## III. Jury Instructions

Young contests several jury instructions given by the trial court.

Jury instructions are solely within the discretion of the trial court; we will reverse only if the court abuses that discretion. *Tanner v. State*, 471 N.E.2d 665, 667 (Ind.1984). Such abuse, however, does not occur if the instructions, considered as a

Young," Officer Ross testified that he said "Tracey Jones." (R. at 637, 679).

whole and in reference to each other, do not mislead the jury as to the applicable law. *Daniel v. State,* 582 N.E.2d 364, 373 (Ind. 1991).

Young claims the court erred by giving its Preliminary Instruction No. 6 on reasonable doubt, rather than using the instruction he tendered. He alleges that the court's instruction was argumentative and confusing by using the words "imagination or speculation" in the first paragraph and "absolute certainty" in the second paragraph. Further, he argues the instruction did not establish the requisite level of certainty needed for reasonable doubt.

The actual instruction given by the court read:

The State has the burden of proving the Defendant guilty beyond a reasonable doubt.

A reasonable doubt is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all the evidence and circumstances in the case. It should be a doubt based upon reason and common sense and not a doubt based upon imagination or speculation.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you should find [him/her] guilty. If on the other hand, you think there is a real possibility that [he/she] is not guilty, you should give [him/her] the benefit of the doubt and find [him/her] not guilty.

(R. at 104).

The defendant's proposed final instruction stated:

A reasonable doubt is a fair, actual and logical doubt that arises in your mind after an impartial consideration of the evidence and circumstances in the case. It should be a doubt based on reason and common sense.

To prove the defendant's guilt of the elements of the crimes charged beyond a reasonable doubt, the evidence must be such that it would convince you of the truth of it to such a degree of certainty that you would feel safe to act upon such conviction without hesitation in a matter of the highest concern and importance to you when you are not required to act at all. (R. at 122).

■ These two instructions are substantively similar. Because trial courts are not required to give instructions already covered by other instructions, the court did not abuse its discretion in rejecting Young's instruction. *Schweitzer v. State,* 552 N.E.2d 454, 457 (Ind.1990) (citing *Carter v. State,* 512 N.E.2d 158, 168 (Ind.1987)).

■ Although Young challenges the words "imagination or speculation" and "absolute certainty," we have approved using words of this very sort. *See Winegeart v. State,* 665 N.E.2d 893, 902 (Ind.1996) (the words "absolute certainty" were approved by our authorization and recommendation of the use of the Federal Judicial Center, Pattern Criminal Jury Instruction 18–19 (1987) on reasonable doubt); *Hoskins v. State,* 441 N.E.2d 419, 426 (Ind.1982) (using the words "imagination and speculation" in a reasonable doubt instruction was not error). Finally, the instruction sufficiently establishes the requisite degree of certainty—it requires the jury to be "firmly convinced" of the defendant's guilt based on the evidence. *Winegeart,* 665 N.E.2d at 902.

■ The second instruction that Young challenges is the instruction directing jurors "to fit the evidence to the presumption that the Defendant is innocent and the theory that every witness is telling the truth." (R. at 105, 151). Young claims the instruction is prejudicial because it urges the jury to assume everyone is telling the truth regardless of whether he presents witnesses or testifies.

Although we approved this instruction in *Lottie v. State,* 273 Ind. 529, 534–35, 406 N.E.2d 632, 637 (1980), Young distinguishes that case because, unlike the defendant in *Lottie,* he did not testify. This distinction is unavailing. The instruction merely "tells the

jury that they are to test the evidence as they hear it so that they may then fit that evidence to the presumption that the defendant is innocent." *Id.* It does not mandate that jurors are to believe every witness irrespective of the defendant's presumption of innocence. This instruction is not erroneous.

The trial court also instructed the jury that "[t]he intent of the defendant may be inferred from his conduct and all the surrounding facts and circumstances proved in the case." (R. at 118, 145). Young believes this instruction suggested to the jury that, regardless of who committed the act, the intent should be attributed to him.

We previously determined that this instruction correctly states the law. *See Miller v. State,* 541 N.E.2d 260, 262 (Ind.1989). Contrary to Young's assertions, the instruction did not attribute acts, or intent therefrom, to Young. It merely informed the jury that Young's intent could be inferred from his conduct, if that conduct had been proven. The instructions taken as a whole make this abundantly clear.

Appellant also contests the court's instruction on motive. (R. at 120, 150). Young claims it did not clarify the distinction between motive and intent, and thereby, diluted the state's burden of proof. This instruction comes directly from Indiana Pattern Jury Instructions (Criminal) 12.27.[6] We also have approved its use in *Light v. State,* 547 N.E.2d 1073, 1081 (Ind.1989). As our intermediate court stated in *Malone v. State,* 660 N.E.2d 619 (Ind.Ct.App.1996), "the instruction does not lead us to conclude that the jury could have interpreted it as relieving the State of its burden to prove intent." *Id.* at 630. We agree and find no reversible error.

### IV. Unreasonableness of Sentence

Young's final allegation of error is that his 195 year sentence was manifestly unreasonable because the trial court failed to consider his mental disabilities as a mitigating factor.

Determination of sentences are a matter of discretion for the trial court. *Sims v. State,* 585 N.E.2d 271, 272 (Ind.1992). When deciding to enhance a sentence, however, the court must state all significant aggravating and mitigating factors, and articulate the balancing process by which it determined that the aggravating factors outweighed the mitigating ones. Ind.Code Ann. § 35-38-1-7.1 (1998); *Harris v. State,* 659 N.E.2d 522, 527 (Ind.1995). Although weight need not be give to every mitigating factor, the court cannot ignore mitigating factors that are clearly supported by the record. *Widener v. State,* 659 N.E.2d 529, 534 (Ind.1995).

The Indiana Constitution confers upon this Court the power to review and revise sentences. Ind.Const. art. VII, § 4. But, we will not revise a sentence unless it is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B); *Barany v. State,* 658 N.E.2d 60, 67 (Ind.1995).

Finding numerous aggravating factors and no mitigating factors, the trial court sentenced Young to twenty years for robbery, fifty years for each attempted murder, and sixty-five years for murder. (R. at 864–67). The murder and two attempted murder sentences were to be served consecutively and the robbery sentence was to run concurrent with the other terms. The court then enhanced the sentence by thirty years based on the habitual finding for a total of 195 years executed.

We find this sentence to be manifestly unreasonable. Although the court recorded no mitigating factors, the record clearly indicates that Young functions with the mental capacity of a child. (R. at 856, 861–62). In fact, during a pre-trial conference, the court found Young to be mentally retarded under Indiana Code § 35-36-9-2 (1998). Therefore, it determined that he could not be sentenced to life without parole under Indiana Code § 35-50-2-9 (1998). (R. at 279–82).

---

6. The Indiana Pattern Jury Instructions are prepared under the auspices of the Indiana Judicial Conference Criminal and Civil Instruction Committees. Although not formally approved for use, they are tacitly recognized by Indiana Trial Rule 51(E). *Winegeart v. State,* 665 N.E.2d 893, 901 n. 1 (Ind.1996).

By sentencing Young to 195 years, however, the court virtually imposed life without parole anyway.

We believe that the trial court should have given this mitigator some weight in the sentence.

### Conclusion

We vacate Young's sentence and remand this cause to the trial court with instructions to impose a twenty year sentence for robbery, fifty years for each attempted murder, sixty-five years for murder, and thirty years for the habitual finding. Although the robbery, murder, and one of the attempted murder sentences are to run consecutively, the other attempted murder conviction and the habitual enhancement are imposed concurrently. This totals 135 years executed.

SULLIVAN, SELBY and BOEHM, JJ., concur.

DICKSON, J., concurs as to the conviction but dissents to the majority's finding that the sentence is manifestly unreasonable.