## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 27 2016, 8:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amanda O. Blackketter
Blackketter Law, LLC
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Francis Corley, *Appellant-Defendant,* | May 27, 2016 |
| v. | Court of Appeals Case No. 73A01-1507-CR-914 |
| | Appeal from the Shelby Circuit Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Charles D. O'Connor, Judge |
| | Trial Court Cause No. 73C01-1501-F5-8 |

**Mathias, Judge.**

[1] Michael F. Corley ("Corley") was convicted in Shelby Circuit Court of Level 5 felony trafficking with an inmate, Level 5 felony bribery, and Class A misdemeanor trafficking with an inmate. On appeal, Corley claims that the trial court abused its discretion by admitting into evidence the recordings of two jail telephone calls between Corley and two unknown individuals.

[2] We affirm.

## Facts and Procedural History

[3] At the time relevant to this appeal, Jerrica Kirby ("Kirby") was a jail officer employed by the Shelby County Sheriff's Department. As part of her duties as a jail officer, Kirby transported inmates, checked on inmates, and passed out food, clothing, and supplies to the inmates.

[4] In December 2014, one of the inmates of the Shelby County Jail at the time was Corley. Corley began to "jokingly" ask Kirby to bring tobacco into the jail for him. Kirby eventually agreed to bring tobacco into the jail for Corley, knowing that tobacco was prohibited inside the jail. Kirby and Corley agreed that she would bring tobacco into the jail and give it to Corley in exchange for money. To arrange this, Kirby allowed Corley to use her cell phone, even though cell phones were also banned inside the jail. After Corley contacted his sources outside the jail using Kirby's cell phone, Kirby talked with Corley's long-time friend, Adam Bennett ("Bennett") about obtaining the tobacco. Corley told Kirby that Bennett would provide her with the tobacco and money for her involvement.

Thereafter, Kirby telephoned Bennett, and the two agreed to meet at a local drug store parking lot. At the parking lot, Bennett approached Kirby's car and handed her $100 and a one-pound bag of pipe tobacco. Kirby later divided the tobacco into smaller portions and placed these portions inside zip-top sandwich bags. The next time she went to work, Kirby took the tobacco into the jail and slid it to Corley under the door to his jail cell while making her rounds. Kirby repeated her actions at least two more times.

Another jail inmate, B.B., noticed that Corley was reselling tobacco in the jail. Corley falsely told this inmate that he was getting the tobacco through the jail laundry system. B.B. noticed, however, that Corley and Kirby had several interactions, with Kirby stopping at the door to Corley's cell.

Shelby County Jail Commander Jerad Sipes ("Sipes") began to investigate the presence of tobacco in the jail. Eventually Sipes spoke with B.B., who informed him of Corley's interactions with Kirby. Sipes then reviewed jail surveillance video, which showed Kirby bending down in front of Corley's cell door. He also reviewed audio recordings of jail phone calls made by Corley. In one of these recorded calls, Corley tells the woman to whom he is talking that he found a "mule" and asks her for $100. Ex. Vol., State's Ex. 2. He also tells her, "I need you and Adam to . . . that's part of the deal," and "I really need you guys to come through with something for me." *Id*. In another call, he refers to person on the line as "Adam" and tells him, "I'm gonna try to get that hundred back to you." *Id*., State's Ex. 4.

[8] When Kirby was confronted by her superiors, she admitted that she had trafficked with an inmate. She was then fired and turned over various items in her possession belonging to the Sheriff's Department. She also turned over the bag of tobacco. Kirby was later charged with the crime of trafficking with an inmate. Bennett, who refused to cooperate with the investigation, was also charged with trafficking with an inmate and bribery.

[9] On January 28, 2015, the State charged Corley with three counts: Count I, Level 5 felony trafficking with an inmate; Count II, Level 5 felony bribery; and County III, Class A misdemeanor trafficking with an inmate. The State later added an allegation that Corley was a habitual offender.

[10] A three-day jury trial was held on June 8 – 10, 2015. At trial, the State offered into evidence the video recordings from the surveillance cameras and the recorded jail telephone calls into evidence. The trial court admitted these over Corley's objection. Kirby testified against Corley and admitted that she had provided Corley with tobacco and a cell phone and had received $100 in exchange. At the conclusion of the trial, the jury found Corley guilty as charged. The trial court subsequently sentenced Corley to four-and-one-half years' incarceration on both Level 5 felony counts and to one year on the misdemeanor count. The trial court enhanced the sentence on Count II by thirty months and ordered the sentences on all counts to be served concurrently, for an aggregate term of eighty-four months, i.e. seven years. Corley now appeals.

## Standard of Review

Corley contends on appeal that the trial court erred in admitting into evidence two of the recordings made of his jail telephone calls. Decisions regarding the admission of evidence are entrusted to the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. *Rogers v. State*, 897 N.E.2d 955, 959 (Ind. Ct. App. 2008), *trans. denied*. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*.

## Discussion and Decision

Corley argues that the trial court erred in admitting into evidence State's Exhibits 5 and 6 because only one of the parties to the conversation was authenticated. Corley notes that it has been held that "the identities of both parties must be authenticated before admitting a telephone call." *Young v. State*, 696 N.E.2d 386, 389 (Ind. 1998) (citing *King v. State*, 560 N.E.2d 491, 494 (Ind. 1990)); *see also Johnson v. State*, 699 N.E.2d 746, 749 (Ind. Ct. App. 1998) (noting that a recording is not admissible unless the voices contained thereon are identified). A caller's identity can be established by circumstantial evidence and need not be proven beyond a reasonable doubt. *Young*, 696 N.E.2d at 389.

Here, Corley does not deny the presence of evidence establishing that his voice was *one* of the voices on Exhibits 5 and 6. Instead, he correctly notes that the identity of the other voices on these calls was never established. The State

responds by noting that our courts have repeatedly upheld the admission of recorded jail telephone calls. *See, e.g., Baer v. State*, 866 N.E.2d 752, 762 (Ind. 2007) (affirming trial court's admission of recording of jail telephone call made by defendant to his sister). However, in *Baer*, the identity of both parties on the call was apparently known. The other cases cited by the State are readily distinguishable.

[14] In *Dorsey v. State*, 802 N.E.2d 991 (Ind. Ct. App. 2004), the defendant argued that the conversations on a recorded phone call was hearsay. This court held that the unidentified speaker was acting as the defendant's agent and that the statements were therefore not hearsay but the statement of a party. *Id.* at 994-95 (citing Ind. Evidence Rule 801(d)(2)(D)). Thus, in *Dorsey*, there was no question regarding the authentication of the unidentified speaker on the recording.

[15] In *Steinberg v. State*, 941 N.E.2d 515 (Ind. Ct. App. 2011), the identity of the parties on the recorded call were known to be the defendant and his parents. On appeal, the defendant claimed that the admission of the recordings was improper under both the Federal Wiretap Act and the Indiana Wiretap Act and that recordings contained hearsay and irrelevant and unduly prejudicial information. Again, there was no question regarding the authentication of voices on the call.

[16] Thus, Corley has a colorable argument that the identity of the other participant to the calls should have been established before Exhibits 5 and 6 were admitted

into evidence. Even if we assume *arguendo* that these exhibits were improperly admitted, though, it does not require us to reverse Corley's convictions.

[17] We will not reverse a defendant's conviction if the error was harmless. *Harrison v. State*, 32 N.E.3d 240, 254 (Ind. Ct. App. 2015), *trans. denied*. Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party. *Id.* An error is considered to be harmless if substantial independent evidence of guilt satisfies the reviewing court that no substantial likelihood exists that the challenged evidence contributed to the conviction. *Id.*

[18] Here, we conclude there was substantial independent evidence of Corley's guilt other than the challenged recordings. That evidence satisfies us that there is no substantial likelihood that the admission of these two recorded phone calls contributed to the jury's verdict. First, the statements on the challenged recorded calls are brief and not terribly incriminating. On one, Corley admits that the tobacco was "delicious." Ex. Vol., State's Ex. 6. On the other, the unidentified man with whom Corley is talking states that he was "nervous" and afraid that "something was gonna go bad." Corley tells the man that he has $160 in an account that he could release to the man, and the man responds that he will "figure something out." *Id.*, State's Ex. 5.

[19] However, the statements in the recordings pale in comparison to the other evidence of Corley's guilt: Corley admitted to B.B., his fellow inmate, that he was distributing tobacco in the jail (although he falsely claimed to be obtaining

it through the laundry). Kirby admitted that, in exchange for $100, she gave Corley tobacco by sliding bags of it under his cell door and unchallenged video recordings from the jail show Kirby bending down in front of Corley's cell. Other unchallenged recorded telephone calls from the jail reveal that Corley stated that he had found a "mule," asked for $100, and told "Adam" that he would repay him "that hundred." Ex. Vol., State's Ex. 2, 4. Given this rather overwhelming evidence of Corley's guilt, we can safely say that the admission of State's Exhibits 5 and 6 was, at most, harmless error.

[20] Affirmed.

Vaidik, C.J., and Barnes, J., concur.