## Howard SMALLWOOD, Defendant–Appellant,

v.

## STATE of Indiana, Plaintiff–Appellee.

No. 71S00–0112–CR–653.

Supreme Court of Indiana.

Aug. 16, 2002.

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steven Carter, Attorney General of Indiana, Stephen R. Creason, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Howard Smallwood, appeals his conviction for murder and his sentence of life without parole arising out of the death of Lamarr Ferguson in South Bend in March 2000.

Facing charges for murder; conspiracy to commit murder, a class A felony; felony murder; and burglary, a class A felony, along with the State's request for a sentence of life without parole, Smallwood entered into a plea agreement on the day before his jury trial was scheduled to begin. In the agreement, he stated that he was 38 years of age, had completed schooling through eleventh grade, and "can read, write, and understand the English language." Appellant's Appendix at 306. Pursuant to the agreement, he agreed to plead guilty to murder and to stipulate to the aggravating circumstance charged by the State's request for life without parole (intentional killing while committing or attempting to commit a burglary[1]). The agreement provided that the State would dismiss all other counts in this case, would dismiss all counts in two other pending cases, and would not file charges related to another separate incident. Under the agreement, the defendant and the State were free to argue for a sentence of either life without parole or a term of years.

The trial court conducted guilty plea proceedings the same day, entered a judgment of conviction for murder, and scheduled further sentencing proceedings. The defendant subsequently requested leave to withdraw his guilty plea. Following written submissions and a hearing, the trial court denied the motion. The court thereafter conducted a sentencing hearing and issued detailed findings articulating, evaluating, and weighing the aggravating and mitigating circumstances, and imposing a sentence of life without parole.

The defendant presents three claims on appeal: 1) he is mentally retarded and this prevents him from being sentenced to life without parole; 2) the court failed to give weight to the defendant's intoxication as a mitigating circumstance; and 3) the trial court erred in denying the defendant's request to withdraw his guilty plea.

### Mental Retardation Claim

The defendant first asserts that his mental retardation renders his sentence unauthorized by statute and manifestly unreasonable. Indiana statutory law requires the dismissal of a request for the death penalty or for life without parole upon a determination that the defendant is mentally retarded. Ind.Code § 35–36–9–6.[2] To exert this provision, a defendant

---

1. Ind.Code § 35–50–2–9(b)(1).

2. The pretrial procedure for determination of mental retardation in capital cases statute only explicitly refers to death penalty cases. It is clear, however, that when read in conjunction with the sentencing statute, it applies equally to life without parole cases. Ind.Code § 35–50–2–9(a) states, "the State may not proceed against a defendant under this section if a court determines at a pretrial hearing

must file a petition alleging mental retardation not later than twenty days before the omnibus date. I.C. § 35–36–9–3. Upon receipt of the petition, the trial court must order an evaluation of the defendant. *Id.* Further, an adversarial hearing on the petition must be held at which the defendant must prove by clear and convincing evidence that he meets the definition of a mentally retarded individual. I.C. § 35–36–9–4. The trial court must enter its determination and articulate findings supporting its determination of the issue not later than ten days before the initial trial date. I.C. 35–36–9–5.

The defendant did not file a petition to determine mental retardation. Not until the sentencing hearing did the defense present evidence that he now contends relates to mental retardation. The defense called a neuro-psychologist who primarily testified regarding the psychological condition[3] and motivations of the defendant and his future dangerousness in light of his age and possible length of incarceration. This testimony also included his opinion that the defendant had a substandard IQ, "in the range of 70–75" and that the defendant "had superficial intelligence but there was not much

in substance in terms of problem solving or coping mechanisms." Appellant's Appendix at 417. The defendant concedes that he did not follow the statutory procedure for asserting the mental retardation defense, but argues that the trial court's sentencing findings[4] indicate that the defendant "would have been determined to be a mentally retarded individual if this procedure had been followed." Br. of Appellant at 13.

■ The statutory procedure governing mental retardation claims was not employed in this case thus inhibiting the trial court's opportunity to make an informed and reliable determination regarding the alleged mental retardation. In addition to not filing a petition alleging mental retardation, the defense did not assert mental retardation among its claimed mitigating circumstances at sentencing. Having failed to properly present this claim at trial, the defendant may not assert it on appeal.

■ In the alternative, the defendant contends that his sentence is manifestly unreasonable in light of his mental retardation.[5] Although a trial court may have

---

under I.C. 35–36–9 that the defendant is a mentally retarded individual." *See also* I.C. § 35–50–2–3(b)(sentencing statute for murder stating I.C. 35–36–9 applies to life without parole cases). Further, the State agrees that the pretrial procedure contained in I.C. 35–36–9 applies to life without parole.

3. The psychologist agreed that the defendant was "neuro-psychologically sound" and had "no psychiatric disturbances that would warrant treatment." Tr. at 202.

4. In its sentencing order, the trial court acknowledged the specific information provided in the expert's testimony and concluded that the testimony

"assisted the court, greatly, in understanding the defendant's psychological condition

and his motivations. It is apparent the defendant acted in accordance with his psychological make-up and the experiences he had as a child. It does little, however, to mitigate the defendant's acts in this case. [The psychologist] also noted that the defendant had no psychological disturbances which warranted treatment. Accordingly, the court places some, but not significant, weight on this as a mitigating factor."
Appellant's Appendix at 422.

5. The defendant highlights *Young v. State,* 696 N.E.2d 386, 391 (Ind.1998) as support of his contention. *Young,* however, involved a widely different set of circumstances. Young was determined to be a mentally retarded individual under the statutory procedure, thereby exempting him from a sentence of life without parole, but then he was given a term

acted within its lawful discretion in determining a sentence, Article 7, § 4 of the Indiana Constitution authorizes independent appellate review and revision of a sentence imposed by the trial court.

The defendant acknowledges that the character of his offense is heinous. He and his accomplices broke into a residence seeking to kill a witness against the defendant's relative in an upcoming trial. Upon entering, the defendant and a cohort fired five times into a person sleeping on the couch without confirming the identity of the victim. After firing two shots the defendant's gun jammed, the other man fired twice, and then the defendant was able to fire another shot into the victim. In actuality, the sleeping person was not the intended victim but a twelve-year-old boy. The defendant has a long history of both juvenile and adult criminal behavior.

Notwithstanding the nature of the offense, the defendant asserts that his "character as manifested by his mental retardation renders his sentence manifestly unreasonable on its face." Br. of Appellant at 14. The defense of mental retardation must be established by clear and convincing evidence. Ind.Code § 35–36–9–4(b). The defendant's psychologist did not testify that, in his opinion, the defendant was mentally retarded. The defendant asserts that "the trial court found that Smallwood's IQ was in the range of the mentally retarded." Br. of Appellant at 15. This is incorrect. The trial court made no such finding. In the absence of evidence establishing that the defendant was mentally retarded, we decline to evaluate whether his claim of retardation renders his sentence manifestly unreasonable. From the evidence presented at sentencing, life imprisonment without parole is not a manifestly unreasonable sentence for this crime and this defendant.

of years sentence that was tantamount to a

## Intoxication as a Mitigating Circumstance

■■■ The defendant also contends that the trial court failed to accord weight to the mitigating circumstance that the defendant was intoxicated at the time of the crime. Sentencing decisions rest within the discretion of the trial court, and are reviewed on appeal only for an abuse of discretion. *Monegan v. State*, 756 N.E.2d 499, 501 (Ind.2001). A trial court need not regard or weigh a possible mitigating circumstance the same as urged by the defendant. *Id.* at 504.

■■ The trial court's sentencing order expressly addressed the defendant's claim of intoxication as a mitigating circumstance:

> Although the defendant did not testify as to his degree of impairment or intoxication, if any, the court does note, however, that the defendant and his co-defendants had been consuming alcohol and cocaine when this offense took place. In reviewing the evidence presented, this fact neither rises to a defense nor, given the apparent ease with which the crime was committed and the fact that the defendant carried out his intent indicates any level of impaired thinking, beyond that testified to by Dr. Hudson. Accordingly, the court gives no weight to this as an aggravating factor.

Appellant's Appendix at 426. The trial court's explanation demonstrates that this mitigating circumstance was carefully considered. We decline to find an abuse of discretion in the court's decision not to give weight to this proposed mitigating circumstance.

## Refusal to Allow Withdrawal of Guilty Plea

The defendant's final contention asserts that the trial court erred in failing to grant

life sentence. *Id.* at 392.

his motion to withdraw his guilty plea. Citing evidence presented during the sentencing hearing regarding his mental capacity, he argues that the trial court abused its discretion "by failing to find that allowing Smallwood to withdraw his plea was necessary to correct the manifest injustice of a mentally retarded defendant entering an unintelligent plea." Br. of Appellant at 23.

Motions to withdraw guilty pleas are governed by Ind.Code § 35–35–1–4. After the plea of guilty but before sentencing, a court may grant the motion for "any fair or just reason." *Id.* However, the court is required to grant the motion to prevent "manifest injustice" and is required to deny the motion when the State would be "substantially prejudiced." *Id.* The trial court's decision is reviewed for abuse of discretion. *Id.* Upon appeal:

> The trial court's ruling on a motion to withdraw a guilty plea arrives in our Court with a presumption in favor of the ruling. *Coomer v. State,* 652 N.E.2d 60, 62 (Ind.1995). One who appeals an adverse decision on a motion to withdraw must therefore prove the trial court abused its discretion by a preponderance of the evidence. *Weatherford v. State,* 697 N.E.2d 32, 34 (Ind.1998). We will not disturb the court's ruling where it was based on conflicting evidence. *Id.*

*Johnson v. State,* 734 N.E.2d 242, 245 (Ind. 2000).

The defendant raised multiple arguments before the trial court in this motion to withdraw the guilty plea including: the plea was not entered intelligently; the defendant did not have all his legal papers; the defendant pleaded guilty to a dismissed count (Count IV);[6] the defendant was under fear, pressure, and duress; the

defendant lied to the court, he did not understand the theory of transferred intent; and the defendant has a learning disability and suffers from post traumatic distress disorder. After a hearing on the issue, the trial court denied the defendant's request. Significantly, at the time the trial court considered and denied the defendant's request to withdraw his guilty plea, there had been no claim of mental retardation, nor had any evidence regarding the defendant's mental capacity been presented. The only evidence touching on mental capacity occurred later, during the sentencing hearing.

The trial court did not err in failing to consider the defendant's alleged mental retardation when ruling on the motion to withdraw the guilty plea. We find no abuse of discretion in denying the defendant's request to withdraw his guilty plea.

### Conclusion

The defendant's conviction and sentence are affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

6. Count IV was the burglary on which the request for a sentence of life without parole in Count V was based. The defendant stipulated to the truth of the aggravator that the murder was committed during a burglary.