Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 12 2014, 10:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY P. BRODEN**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TY WILKERSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1303-CR-234 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1204-FA-09

**March 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Ty Wilkerson ("Wilkerson") appeals the Tippecanoe Superior Court's denial of his motion to set aside his plea of guilty to Class A felony dealing in methamphetamine. On appeal, Wilkerson claims that the trial court should have granted his motion because of an alleged conflict of interest which denied him the effective assistance of counsel.

We affirm.

**Facts and Procedural History**

The State charged Wilkerson on April 30, 2012, with Class A felony conspiracy to commit dealing in methamphetamine, Class A felony dealing in methamphetamine, Class B felony possession of methamphetamine, Class C felony possession of precursors to methamphetamine, and Class D felony maintaining a common nuisance. A deputy prosecutor with the Tippecanoe County Prosecutor's office, Timothy Curry ("Curry"), was assigned to prosecute Wilkerson and his co-defendant. As part of his role in prosecuting the case against Wilkerson, Curry prepared a discovery disclosure and, on June 25, 2012, a plea offer.

In October 2012, Curry left the prosecutor's office and began to work at the Tippecanoe County Public Defender's office. The Public Defender's office screened Curry for any potential conflicts of interest. The Public Defender's office also sought the opinion of an outside expert, Donald Lundberg ("Lundberg"), of the law firm of Barnes and Thornburg, LLP.[1] Lundberg prepared a memorandum for the Public Defender's office, which stated in part, "The key here is to screen the former DPA [deputy prosecuting attorney] so that none of the disqualifying information known to him will

---

[1] Lundberg was formerly the executive director of the Indiana Supreme Court's Disciplinary Commission.

penetrate the screen to other public defenders who are adverse to the State in cases from which the former DPA is disqualified." Ex. Vol., Defendant's Ex. B., p. 7. Lundberg provided the Public Defender's office with a compliance checklist, which was given to Curry. Curry then created a list of all cases he had worked on while at the prosecutor's office, which included Wilkerson's case. Curry also signed an affidavit stating that he was not allowed to discuss his previous cases with any of the public defenders and was instead to "make a wall and not discuss any facts or circumstances" of those cases. Id., Defendant's Ex. C. The other public defenders were also given a memorandum explaining the screening situation.

James Trueblood ("Trueblood"), Chief Deputy Public Defender at the Tippecanoe County Public Defender's Office, had been appointed to represent Wilkerson. After Curry was hired by the Public Defender's office, Trueblood acted in accordance with the screening memorandum and did not discuss Wilkerson's case with Curry after he left the prosecutor's office. Further, in each case where Curry had been involved in the prosecution, including Wilerkson's case, the Public Defender's office gave the defendant an individual client letter explaining that Curry was now working for the Public Defender's office. The letter explained that Curry would not be involved in the representation of the defendant and would be screened from any involvement. Lastly, the letter stated:

> We understand that you might be concerned that a person who, until recently, was prosecuting you is now a public defender in our office. It is our opinion that there will be no [e]ffect on the defense of your case. But you may not share that opinion. *If you do not, I ask that you contact me immediately and request reassignment of your case to conflicts counsel not*

*the staff of the public defender's office. We will make every effort to promptly reassign your case.*

Id., Defendant's Ex. D (emphasis added). Trueblood also went to the jail to speak with Wilkerson about the situation. Wilkerson indicated that he wanted Trueblood to continue to represent him.

On January 2, 2013, Wilkerson entered into a plea agreement with the State whereby he would plead guilty to Class A felony dealing in methamphetamine; the remaining counts were to be dismissed. The trial court accepted the plea and, on February 11, 2013, sentenced Wilkerson to twenty-five years, with twenty years executed and five years suspended to probation.

On April 3, 2013, Wilkerson filed a motion to withdraw his guilty plea. The trial court set the matter for a hearing on April 26, 2013. At the hearing, Wilkerson claimed that he received the ineffective assistance of trial counsel, attributing Curry's conflict of interest to the entire Public Defender's office, including his trial counsel Trueblood. On April 30, 2013, the trial court denied Wilkerson's motion to withdraw his guilty plea. Wilkerson now appeals.

**Standard of Review**

Motions to withdraw guilty pleas after sentencing are governed by Indiana Code section 35-35-1-4. This section provides:

> (c) After being sentenced following a plea of guilty, or guilty but mentally ill at the time of the crime, the convicted person may not as a matter of right withdraw the plea. However, upon motion of the convicted person, the court shall vacate the judgment and allow the withdrawal whenever the convicted person proves that withdrawal is necessary to correct a manifest injustice. A motion to vacate judgment and withdraw the plea made under this subsection shall be treated by the court as a petition for postconviction

4

relief under the Indiana Rules of Procedure for Postconviction Remedies. For purposes of this section, withdrawal of the plea is necessary to correct a manifest injustice whenever:

    (1)  the convicted person was denied the effective assistance of counsel;
    (2)  the plea was not entered or ratified by the convicted person;
    (3)  the plea was not knowingly and voluntarily made;
    (4)  the prosecuting attorney failed to abide by the terms of a plea agreement; or
    (5)  the plea and judgment of conviction are void or voidable for any other reason.

The motion to vacate the judgment and withdraw the plea need not allege, and it need not be proved, that the convicted person is innocent of the crime charged or that he has a valid defense.

Ind. Code Ann. § 35-35-1-4 (West).

Our supreme court has held that this statute requires a trial court to grant a request to withdraw a guilty plea where the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice. Coomer v. State, 652 N.E.2d 60, 61-62 (Ind.1995)). On the other hand, a trial court must deny a motion to withdraw a guilty plea if the withdrawal would result in "substantial prejudice" to the State. Id. at 62. "Manifest injustice" and "substantial prejudice" are "necessarily imprecise standards" and "[e]xcept under these polar circumstances, disposition of the petition is at the discretion of the [trial] court." Id. Thus, "the trial court's ruling on a motion to withdraw a guilty plea arrives in this Court with a presumption in favor of the ruling." Id. The trial court's decision is reviewed for abuse of discretion. Smallwood v. State, 773 N.E.2d 259, 264 (Ind. 2002). And we will not disturb the court's ruling where it was based on conflicting evidence. Id.

## Discussion and Decision

Wilkerson claims that he should have been allowed to withdraw his guilty plea because the Public Defender's office had a conflict of interest. "The federal constitutional right to effective assistance of counsel necessarily includes representation that is free from conflicts of interest." Woods v. State, 701 N.E.2d 1208, 1223 (Ind. 1998) (citing Wood v. Georgia, 450 U.S. 261, 271 (1981)). To establish a deprivation of the right to counsel due to a conflict, a defendant who failed to raise the objection at trial must demonstrate that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance. Id. (citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)).

Wilkerson argues that his trial counsel, Trueblood, and the whole Public Defender's office had a conflict of interest after hiring Curry, who had worked on Wilkerson's case as a deputy prosecuting attorney. In support of his claim, Wilkerson cites Indiana Professional Conduct Rule 1.11(a)(2), which provides in relevant part:

> (a) Except as law may otherwise expressly permit, a lawyer who has formerly served as a public officer or employee of the government:
> (1) is subject to Rule 1.9(c)[2]; and
> (2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing to the representation.

---

[2] Rule 1.9(c) provides:
> A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

This of course, would apply only to Curry, who did not represent Wilkerson as a public defender. But such disqualification can be imputed to an entire law firm:[3]

> (b) When a lawyer is disqualified from representation under paragraph (a), no lawyer in the firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter *unless:*
>> *(1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom*; and
>> (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.

Prof. Cond. R. 1.11(b) (emphasis added). Rule 1.0 (k) defines "screened" as "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law."

Wilkerson claims that Curry did not identify the specific means by which he was precluded from accessing the files of defendants who he had formerly been prosecuting. He similarly claims that Trueblood did not identify the specific measures he undertook to secure Wilkerson's file. However, after Curry was hired, the Public Defender's office sought the advice of outside counsel with extensive experience in such matters. Pursuant to the advice of outside counsel, Curry informed the Public Defender's office of every case he had been involved in as a deputy prosecuting attorney. He also signed an affidavit stating that he would not discuss the cases he had worked on as a deputy

---

[3] We assume *arguendo* that the Public Defender's office was a "law firm." But see In re Recker, 902 N.E.2d 225 (Ind. 2009) (holding that public defenders who shared office space and support staff were not a law firm for purposes of the Rules of Professional Conduct).

prosecuting attorney, and that a "wall" was created between him and the other public defenders for these cases. Other public defenders were given memoranda explaining these measures. Curry testify that he did not discuss Wilkerson's case with Trueblood, and Trueblood testified likewise. Curry and Trueblood also testified that they abided by the screening "checklist" prepared by Lundberg, which prohibited access to files and documents of the defendants Curry had formerly prosecuted.

Importantly, Trueblood testified that he gave Wilkerson a letter explaining this situation, spoke with him about the situation, and that Wilkerson indicated that he desired that Trueblood continue to represent him. Wilkerson denied this at the withdrawal hearing, but the trial court did not have to credit his testimony. See Smallwood, 773 N.E. at 264. Thus, the trial court was presented with evidence that Curry did not discuss Wilkerson's case with anyone at the Public Defender's office, did not access Wilkerson's files, and that Trueblood had no discussion of Wilkerson's case with Curry. In addition, Wilkerson was fully informed of Curry's presence at the Public Defender's office and chose to continue to be represented by Trueblood. Under these facts and circumstances, the trial court did not abuse its discretion in denying Wilkerson's motion to withdraw his guilty plea.

Affirmed.

BRADFORD, J., and PYLE, J., concur.