**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JASON SEVERS, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 84A05-1310-CR-527 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael J. Lewis, Judge
Cause No. 84D06-1108-FB-2398

**June 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jason Severs appeals his sentence for securities fraud as a class B felony, unlawful acts related to offer of sale of a security as a class C felony, and violating broker-dealer registration requirements as a class C felony. Severs raises two issues which we revise and restate as:

I. Whether the trial court abused its discretion in sentencing him; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On July 30, 2009, through August 1, 2011, in connection with the offer of sale of a security, Severs directly or indirectly employed a device, scheme or artifice to defraud; made an untrue statement of a material fact or omitted to state a material fact necessary to make the statement made, in light of the circumstances under which it was made, not misleading; or engaged in an act, practice, or course of business that operated or would operate as a fraud or deceit upon another person. Specifically, Severs made untrue statements of material fact to Garnita Gaskill, Nancy Jean Buckner, and Nancy Swank, each of whom were over the age of sixty years, when he informed them that their monies would be used for investment purposes.

On or about August 18, 2000, through August 1, 2011, Severs offered and sold securities that were neither registered with the Indiana Secretary of State, Securities Division, nor were they federal covered securities or securities exempted from registration under the Indiana Code. Specifically, Severs offered and sold securities to William Grubba, Scott Snyder, Brenton and Jessica Haberman, Michael and Dusk

2

Haberman, Gaskill, Nancy Jean Buckner, Timothy R.B. Buckner, Nancy Swank, Donna Swank, Patsy L. Britt, Dwight B. Burton, Susan M. Burton, Valeria Ferency, Eugene Gray, Paul D. Gray, Vic Raber, Lloyd Raber, Terry Severs, Nancy Severs, Enid Usrey, James Donnenhoffer, Sondra S. Gay, David Graber, Larry Graber, Benjamin Graber, Loren Graber, Mark Haring, Paul Hoffner, Daniel L. Stoll, and Jacqueline A. Wurth.

Also, on or about August 18, 2000, through August 1, 2011, Severs knowingly transacted business as a broker-dealer without being registered with the Indiana Secretary of State, Securities Division, as required by law, and without being exempt from registration. Specifically, Severs sold securities to Grubba, Snyder, Brenton and Jessica Haberman, Michael and Dusk Haberman, Gaskill, Nancy Jean Buckner, Timothy R.B. Buckner, Nancy Swank, Donna Swank, Britt, Dwight Burton, Susan Burton, Ferency, Eugene Gray, Paul Gray, Vic Raber, Lloyd Raber, Terry Severs, Nancy Severs, Usrey, Donnenhoffer, Gay, David Graber, Larry Graber, Benjamin Graber, Loren Graber, Haring, Hoffner, Stoll, and Wurth.

On August 1, 2011, the State charged Severs with forty-one counts of unlawful acts related to the offer of sale of securities as class C felonies, forty-one counts of violations of broker-dealer registration requirements as class C felonies, ten counts of securities fraud as class C felonies, and three counts of securities fraud as class B felonies.

On May 3, 2013, Severs entered into a plea agreement in which he agreed to plead guilty to amended charges of Count I, securities fraud as a class B felony, naming each victim over the age of sixty years; Count II, unlawful acts related to the offer of sale of a

3

security as a class C felony, naming each victim; and Count III, violating broker-dealer registration requirements as a class C felony, also naming each victim. The agreement provided that the sentences on all three counts would run consecutive to each other and left the sentence to the discretion of the court with a cap of twenty-five years on any initially executed term of imprisonment. The agreement also provided that Severs would be liable for restitution and that the proceeds available for restitution from the sale of his home would be distributed to the victims on a pro rata basis as determined by the Secretary of State. The State agreed to dismiss the remaining charges.

At the sentencing hearing, Severs's counsel read a statement on behalf of Severs in which he apologized to the victims and expressed a desire to take responsibility for his actions. Diana Davis, an attorney with the Indiana Secretary of State's Office, estimated the total amount invested through the alleged securities that Severs sold was three million dollars. She also testified that the total requested restitution figure, based on proof of bank records and check numbers from 2004, was $1,376,901.56, which she believed to be "very conservative." Sentencing Transcript at 11.

The court accepted the plea agreement and found the following aggravators: Severs's actions affected many people's lives and depleted the victims' life savings, he was friends with or befriended the victims and in doing so placed himself in a position of trust, he manipulated the victims, and he caused damage to other family members of the victims by taking the victims' life savings. The court found the following mitigators: Severs's lack of prior criminal activity, the fact that he was released from custody and returned to take responsibility, and he saved the county a substantial amount of money by

4

entering into the plea agreement. The court stated: "No prior criminal history, but he wasn't caught over those ten (10) years so I agree with [the prosecutor] that he was committing a crime um, over those ten (10) years he just wasn't caught yet until someone went to cash a check and there was no money in that account, and that started this ball rolling." Id. at 38. The court found that the aggravating circumstances significantly outweighed the mitigating circumstances. The court sentenced Severs to the Department of Correction for a term of imprisonment of thirteen years for securities fraud as a class B felony, six years for unlawful acts related to the offer of sale of a security as a class C felony, and six years for violating broker-dealer registration requirements as a class C felony. The court ordered that the sentences be served consecutive to each other for an aggregate sentence of twenty-five years.

DISCUSSION

I.

The first issue is whether the trial court abused its discretion in sentencing Severs. Initially, we observe that the legislature amended the sentencing statutes to incorporate advisory sentences rather than presumptive sentences on April 25, 2005. The Indiana Supreme Court has held that we apply the sentencing scheme in effect at the time of the defendant's offense. See Robertson v. State, 871 N.E.2d 280, 286 (Ind. 2007) ("Although Robertson was sentenced after the amendments to Indiana's sentencing scheme, his offense occurred before the amendments were effective so the pre-Blakely sentencing scheme applies to Robertson's sentence."); Gutermuth v. State, 868 N.E.2d 427, 432 n.4 (Ind. 2007).

5

The plea agreement does not specify the dates Severs committed the offenses, but the factual base provided at the guilty plea hearing indicate that Severs's offenses occurred between 2000 and 2011. Of the ninety-five original charges, two charges related to acts occurring prior to April 25, 2005, thirty-three charges related to acts occurring both before and after April 25, 2005, and sixty charges related to acts occurring after April 25, 2005.

Neither party addresses the impact of the April 25, 2005 sentencing revisions on this case. On appeal, Severs cites Anglemyer v. State, 868 N.E.2d 482 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007), which discussed the roles of Indiana trial and appellate courts under the 2005 amendments to Indiana's criminal sentencing statutes. 868 N.E.2d at 484. The 2005 amendments were designed to rectify the Sixth Amendment problem that Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), presented. Id. at 490. Severs makes no argument that the trial court abused its discretion under Blakely. Thus, any claim under Blakely is waived.

Under both the old and new sentencing scheme, we review the sentence for an abuse of discretion. See Anglemyer, 868 N.E.2d at 490; Smallwood v. State, 773 N.E.2d 259, 263 (Ind. 2002) ("Sentencing decisions rest within the discretion of the trial court, and are reviewed on appeal only for an abuse of discretion."). Under both schemes, "[a]n abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" Anglemyer, 868 N.E.2d at 490 (quoting K.S. v.

6

State, 849 N.E.2d 538, 544 (Ind. 2006) (quoting In re L.J.M., 473 N.E.2d 637, 640 (Ind. Ct. App. 1985)).

A. Aggravator

Severs argues that the trial court abused its discretion when it found that he placed himself in a position of trust by befriending his victims because a violation of trust is implicit in the crimes to which he pled guilty. He contends that he could have been simply convicted of theft as class D felonies for his actions, but the legislature has specifically created separate securities crimes with harsher penalties for the kind of stealing that he committed. He further asserts that this is likely because a position of trust is always violated when a person such as Severs holds himself out as a legitimate financial advisor and gains the trust of investors to unlawfully take their money for his own personal gain.

The State argues that the trial court properly found that the position of trust Severs had with his victims was an aggravating circumstance, and that he went beyond the criminality that is anticipated by the legislature for securities fraud. The State points out that several of the victims noted they believed Severs was trustworthy, not just because he held himself out to be a licensed dealer-broker of securities, but because he was often part of their circle of family and friends.

"A position of trust exists where a defendant has 'more than a casual relationship with the victim and has abused the trust resulting from that relationship.'" Amalfitano v. State, 956 N.E.2d 208, 211 (Ind. Ct. App. 2011) (quoting Rodriguez v. State, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007)), trans. denied. The victim impact statement submitted by

7

Carole Templeton, the daughter of Garnita Gaskill, stated that "[i]t had to weigh on [Gaskill's] mind that someone she trusted and considered a friend had deceived her so." Appellant's Appendix Volume II at 138. A victim impact statement written by Marcia McGarvey, Gaskill's daughter, states: "[Gaskill] was devastated when she found out that their life savings had been conned away by [Severs], a smooth talker who pretended to be her friend, who pretended to care about her, and is a family member to boot." Id. at 140. McGarvey also wrote: "My sister, brother, and I all know that [Gaskill] wanted to do the best she could for herself and us and invested with [Severs] because she trusted him." Id. at 141. In a victim impact statement, Vicki Evans, Gaskill's granddaughter, wrote:

> Little did I know until my mom told me late last summer about the fraudulent practice of a trusted relative and that [Gaskill] was fearful of becoming destitute. . . . I was greatly saddened that [Gaskill] was basically ashamed of herself for trusting someone who appeared as trustworthy as [Severs]. . . . [Severs] preyed on a very intelligent family member, yet aging widow, for his own gain. In going through [Gaskill's] personal belongings since her passing, I've come across notes she wrote expressing her grief in trusting such an awful person. . . . Her notes indicated [Severs] told her many times about his health issues that continued his money problems and why prompt repayment was an issue. Were these lies to convince her to give him more money to help him recover from fake health issues? [Severs], in my eyes, is a shameful smooth predator of an honest senior citizen. If he can do what he did to an aging widowed family member, there is no doubt in my mind he is capable of trying to swindle others if given even the slightest opportunity.

Id. at 143. A letter from William Grubba and Family states:

> Severs had become a family friend whom we welcomed into our home and included in many family activities. It is very hard as adults to comprehend how we were conned and lied to in such a hateful and destructive fashion, let alone trying to help our teenage daughters grasp how ugly and distrustful Severs was to us. He used every family related angle conceivable to him . . . . We all have developed a jaded outlook on life and will always be skeptical of the intentions of not only individuals but those

8

> involved in society from a personal or professional level. . . . To consume and obliterate his family in the fashion he has, speaks for itself.

Id. at 148-149. Based upon the record, we cannot say that the trial court abused its discretion in finding that Severs was friends with or befriended the victims and in doing so placed himself in a position of trust as an aggravator.[1]

B.     Mitigators

The determination of mitigating circumstances is within the discretion of the trial court. Rogers v. State, 878 N.E.2d 269 (Ind. Ct. App. 2007), trans. denied. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. Id. "[O]nly when there is substantial evidence in the record of significant mitigating circumstances will we conclude that the sentencing court has abused its discretion by overlooking a mitigating circumstance." Pennington v. State, 821 N.E.2d 899, 905 (Ind. Ct. App. 2005). "An allegation that the trial court failed to identify or find a mitigating circumstance requires the defendant on appeal to establish that the mitigating evidence is both significant and clearly supported by the record." Id.

1.     Restitution

Severs argues that the court abused its discretion by not finding as a mitigator the fact that he voluntarily sold his home and surrendered the proceeds for the purpose of restitution and paid an additional $1,800 toward restitution for a total amount of nearly $70,000. The State argues that the court was not obligated to give credit to Severs's restitution, that the sale of the house and the use of its proceeds for restitution were

---

[1] The original charges that related to Gaskill and Grubba involved acts that occurred after April 25, 2005.

9

already factored into the plea agreement, and that the sale of Severs's house was contemplated in the substantial benefit Severs received from the plea agreement. The State contends that there is nothing in the record that precisely reflects how much the sale of Severs's house netted toward restitution, and that even if the amount was nearly $70,000, Severs's argument fails as this amount is paltry in comparison to the very conservative estimate of $1,376,901.56 in restitution Severs owes to his victims, and that this is especially true considering that notes from 2000 through 2011 indicate that Severs took more than $3,000,000 from his victims.

We agree with the State and cannot say that the trial court abused its discretion. Severs agreed to plead guilty to three counts after being originally charged with ninety-five counts, and the plea agreement provided that Severs would be liable for restitution and that the proceeds available for restitution from the sale of his home would be distributed to the victims on a pro rata basis as determined by the Secretary of State. Severs sold his house only after his arrest. Further, the amount invested with Severs greatly exceeded the amount available for restitution. Davis estimated the total amount invested was three million dollars, and that the total requested restitution figure based on proof of bank records and check numbers from 2004 was $1,376,901.56 which she believed to be "very conservative." Sentencing Transcript at 11. The presentence investigation report ("PSI") indicates that eighteen of the thirty victims responded to letters requesting to know the amount of restitution they were requesting, and that the total amount requested was $1,205,815. We cannot say that the court abused its discretion in not finding restitution as a mitigator.

10

2.     Unlikely to Commit Another Crime

Severs asserts that the court also abused its discretion by omitting the idea that his character and attitude indicate that he is unlikely to commit another crime. He points to the Indiana Risk Assessment System in the PSI which provides that his overall risk assessment score places him in the low risk category to reoffend.

The State asserts that the court did not abuse its discretion in evaluating Severs's risk to reoffend and points out that the court explicitly noted that Severs had been committing fraud for over a decade and that he simply was not charged until 2011. The State contends that it is highly disputable that someone who callously engaged in blatant criminal activity since the late 1990s and for most of his adult life would be unlikely to commit a future offense. The State further argues that Severs feigned concern for his victims, strung his victims along, encouraged more investments by giving small payouts in the beginning, and was often part of the circle of family and friends of his victims.

As noted by the State, we observe that the trial court recognized Severs's lack of criminal history as a mitigator, but also stated: "No prior criminal history, but he wasn't caught over those ten (10) years so I agree with [the prosecutor] that he was committing a crime um, over those ten (10) years he just wasn't caught yet until someone went to cash a check and there was no money in that account, and that started this ball rolling." Sentencing Transcript at 38. Given the length of time over which Severs's offenses occurred, we cannot say that the trial court abused its discretion when it refused to consider this proposed mitigating circumstance.

11

The next issue is whether Severs's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Severs argues that he made a significant attempt to provide restitution to the victims, is unlikely to reoffend, and has no prior record of criminal history. He concedes that he stole significant amounts of money from several persons, but argues that his crimes were not violent in nature and there were no circumstances in this case that set it apart from other similar investment scams. The State argues that the sentence is not inappropriate given the nature of the offense, particularly its duration and the scheme employed, and Severs's character, as demonstrated by his willingness to lie and continue the scheme for over a decade.

Our review of the nature of the offense reveals that on July 30, 2009, through August 1, 2011, Severs made untrue statements of material fact to Gaskill, Nancy Jean Buckner, and Nancy Swank, each of whom were over the age of sixty years, when he informed them that their monies would be used for investment purposes. On or about August 18, 2000, through August 1, 2011, Severs offered and sold securities that were neither federal covered securities nor registered with the Indiana Secretary of State,

Securities Division, to more than thirty individuals. On or about August 18, 2000, through August 1, 2011, Severs knowingly transacted business as a broker-dealer without being registered with the Indiana Secretary of State, Securities Division, as required by law, and without being exempt from registration. He took certain individuals' life savings and their children's college funds. The estimated total amount that was invested through the purported securities Severs sold was at least $1,376,901.56, and as high as three million dollars. The court recognized that the victims were victims of a Ponzi scheme and stated: "This is one of the most outrageous cases I've ever had before me." Sentencing Transcript at 39.

Our review of the character of the offender reveals that Severs pled guilty to three counts more than one year and nine months after being charged with ninety-five counts. He has no juvenile history or prior criminal convictions. Charges of theft as a class D felony and two counts of check deception as class A misdemeanors under cause number 84D06-1105-FD-1522, and charges of theft as a class D felony and check deception as a class A misdemeanor under cause number 84D06-1104-FD-1320, were dismissed as a result of the charges being filed in the current case. After his arrest, Severs sold his house in order to make some restitution to his victims.

The PSI provides that the results of the Indiana Risk Assessment System show that Severs's overall risk assessment score places him in the low risk category to reoffend. The PSI indicates that Severs reported that he graduated from Indiana State University in 1996 with a Bachelor's degree in History. The PSI also states that his transcripts issued February 28, 2012, indicate that Severs earned fifty-five credit hours with a GPA of 1.79,

that he did not graduate from Indiana State University, and that the fact that he lied about his education was a cause for concern. The PSI also reports that Severs was hesitant to answer questions about his financial situation.

After due consideration and in light of the number of victims and the amount of money involved, we cannot say that the sentence of twenty-five years imposed by the trial court is inappropriate.

## CONCLUSION

For the foregoing reasons, we affirm Severs's sentence.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.