## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 25 2015, 9:37 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Luis Mandujano, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 25, 2015 <br><br> Court of Appeals Case No. 49A04-1409-CR-424 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Mark D. Stoner, Judge <br><br> Case Nos. 49G06-1305-FB-29165 <br> 49G06-1307-FB-38597 <br> 49G06-1404-FB-18191 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Luis Mandujano was charged, in three separate cases, with eleven felonies. He pled guilty to three of the felonies, and the State agreed to dismiss the rest. Three weeks later, before he was sentenced, Mandujano filed a motion to withdraw his guilty plea. The trial court denied the motion, finding that Mandujano had "buyer's remorse," and sentenced him to eighteen years in the Indiana Department of Correction.

[2] Mandujano argues that the trial court was required to grant the motion to prevent a manifest injustice because he wrote two letters to the court complaining about his trial counsel. But at the guilty-plea hearing, which was *after* Mandujano wrote the letters to the trial court and *while* he was under oath, the trial court asked Mandujano if he was satisfied with the services of his lawyer, and Mandujano said yes. The trial court also asked Mandujano if he thought his lawyer should have done something for him that she did not do, and Mandujano said no. In addition, the court carefully advised Mandujano of the rights he was waiving and the charges he was pleading guilty to and concluded that Mandujano knowingly and voluntarily waived his rights. Although Mandujano later complained about his trial counsel at the hearing on his motion to withdraw his guilty plea, the trial court did not find him credible. We therefore affirm the trial court's denial of Mandujano's motion.

## Facts and Procedural History

[3] In May 2013, in Case No. 49G06-1305-FB-29165 (Case No. 29165), the State charged Mandujano with Class B felony robbery, Class C felony possession of a

handgun with an obliterated serial number, Class C felony possession of a narcotic drug, and Class D felony criminal gang activity for events that occurred in Marion County, Indiana, between February and May 2013. Appellant's App. p. 29-36. The State later amended the charging information to add a criminal-gang enhancement. *Id.* at 37 (alleging that Mandujano was a member of the Loketes 13 a/k/a Sur 13 and/or Chico Pride gang).

[4] In July 2013, in Case No. 49G06-1307-FB-38597 (Case No. 38597), the State charged Mandujano with Class B felony battery, Class B felony neglect of a dependent, Class D felony neglect of a dependent, Class D felony criminal recklessness, and Class D felony battery for incidents involving his girlfriend's four-year-old son in Marion County, Indiana, between February and May 2013. *Id.* at 94-97.

[5] Finally, in April 2014, in Case No. 49G06-1404-FB-18191 (Case No. 18191), the State charged Mandujano with Class B felony prisoner in possession of a dangerous device for possessing a "shank" while incarcerated in the Marion County Jail.[1] *Id.* at 129.

[6] On July 21, 2014, the day the case was set for trial, Mandujano entered into a plea agreement with the State for all three cases. Specifically, Mandujano pled guilty to Class B felony robbery in Case No. 29165, Class B felony battery in

---

[1] The record shows that Mandujano was in the Marion County Jail for Case No. 29165 from May 3, 2013, to July 21, 2014.

Case No. 38597, and Class B felony prisoner in possession of a dangerous device in Case No. 18191. In exchange, the State agreed to dismiss the remaining eight felonies. According to the plea agreement, Mandujano would serve an eighteen-year sentence that was "open to placement." *Id.* at 65-66, 110-11, 143-44.

[7] That same day, the trial court held a guilty-plea hearing. After carefully reviewing the terms of Mandujano's plea agreement with him, the trial court said:

| THE COURT: | Are you doing this plea of your own free will? |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Have there been any force, threats, or promises used to get you to plead guilty other than the promises that are in the plea agreement? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | I want to make sure you understand the charges you're pleading guilty to, sir. . . . |

Tr. p. 16. The trial court then discussed the charges with Mandujano, and Mandujano confirmed that when he pled guilty, he "admitt[ed] as true" the charges. *Id.* at 18. The following exchange occurred:

| THE COURT: | Are you satisfied with the services of your lawyer, Ms. [Michelle] Wall? |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Anything you think your lawyer should have done for you that she didn't do? |
| THE DEFENDANT: | No, sir. |

*Id.* The trial court then asked the State to establish a factual basis for the charges. The State outlined the factual basis for each charge, the trial court asked Mandujano if he agreed to the factual basis and was guilty, and Mandujano said he was. *Id.* at 20-24. When the trial court asked Mandujano if he still wanted the court to accept his plea, Mandujano replied yes. *Id.* at 24. The trial court found that

> Mandujano is 21 years of age; he understands the nature of the charges against him; he's entered into a written plea agreement and the rights waiver. Court has made personal inquiry on him and finds he does knowingly and voluntarily waive his rights, not only on the basis of the conversation in open court, but also on the basis of a signed written plea agreement and rights waiver which the defendant has indicated he has reviewed with his attorney Ms. Wall and that he does understand. There is a factual basis for his plea; the Court accepts plea and the plea agreement; finds the defendant guilty of [Class B felony robbery, Class B felony battery, and Class B felony prisoner in possession of a dangerous device].

*Id.* at 24-25.

[8] Approximately three weeks later, on August 13, 2014, which was before Mandujano was sentenced, he filed a pro se motion to withdraw his guilty plea. He claimed that his attorney used "deceitful tactics" to "convince" him to plead guilty. Appellant's App. p. 71. Two days later, Mandujano's trial counsel filed a motion to withdraw his guilty plea. The motion alleges as follows:

> 4. [Mandujano] has had time to reflect on the plea of guilty and desires to withdraw the plea and to go to trial on the above charges for the following fair and just reasons:
>
> > a. [Mandujano] says he felt pressured by counsel advising him regarding the likely outcome of his cases should he go to trial.

> b. [Mandujano] says he is not satisfied with his counsel in that he does not feel I provided my best efforts.
>
> 5. The State has not been substantially prejudiced by any reliance on the plea.
>
> 6. The withdrawal of the plea is necessary to correct a manifest injustice.

*Id.* at 114-15. That same day, the trial court held a hearing on Mandujano's motion. Both Mandujano and trial counsel testified. Mandujano explained his allegations, stating trial counsel "hasn't gave me the depositions," "hasn't done depositions on Luther," "I haven't received . . . like no statements, question or answer on none of the cases," and "[t]he witnesses I wanted her to talk to didn't get talked to." Tr. p. 35. In addition, Mandujano said that trial counsel knew that "I'm not satisfied with her representing me. When we went over the plea agreement, she told me that I had to say that I was satisfied with her representing me." *Id.* Mandujano also referred to handwritten letters that he had sent to the trial court in May 2014[2] and July 2014[3] claiming the same thing and a pro se supplemental witness list that he filed in July 2014. Appellant's App. p. 102-03, 135, 136. Trial counsel testified about the work she had done on Mandujano's case, including taking statements in two of the cases, as well as a conversation that she had with Mandujano in his holding cell in which she

---

[2] This letter references Case No. 38597. For example, Mandujano requests a new public defender because trial counsel "has done nothing but try to push me into put[t]ing my signature on a plea deal. . . . [I] am in fear that [I] will be wrongly convicted because [of] her not assisting me." Appellant's App. p. 102-03.

[3] This letter references Case No. 18191. For example, Mandujano alleges that he has "evidence to prove I did not do this, or that this was not used [as] a deadly weapon. . . . I want both Deput[ies] on this case deposed. And I have evidence to compel[] for myself. My witness is Mexican and speaks 4% English." Appellant's App. p. 135.

told him that when he pled guilty, the judge would ask him "if [he's] satisfied with what [she] did." Tr. p. 37.

[9] The court denied Mandujano's motion to withdraw his guilty plea. *Id.* at 45. The court said it "heard no evidence that . . . a manifest injustice would occur." *Id.* Instead, the court explained, "All I've heard is that the Defendant basically says one thing on one day and then at best changes his mind because he doesn't like the result after he's had further opportunity to think about it. That's not what manifest injustice implies." *Id.* at 45-46. In addition, the court found that the State would be substantially prejudiced because Mandujano was a co-defendant in two of the cases, which meant that the State might have to reopen those cases and bring back a co-defendant from Texas. *Id.* at 46. Finally, the court found trial counsel's testimony more credible than Mandujano's testimony. *Id.* at 47. The court explained why:

> The Court does conduct an extensive questioning process at a guilty plea including the questioning that deals with potential ineffective assistance of counsel. It was very clear that Mr. Mandujano at previous times had complained about counsel and yet that was in May.[4] There was no indication at any time during the morning of trial, when the case could have been resolved, that he had issues about pre-trial preparation, discovery or available witnesses. The Court gave him every opportunity to do that and questioned him. He was under oath and what Mr. Mandujano would be basically saying is that he lied to this Court when he was under oath, in other words, that he committed a crime when he was going through his guilty plea. Again the Court believes that simply in this situation it's more the equivalent

---

[4] The trial court did not mention Mandujano's July 2014 letter to the court. However, the court did note at the beginning of the hearing that "there are several letters from the Defendant in the files." Tr. p. 34.

> of buyer's remorse. In weighing the credibility of Mr. Mandujano today as he appears before the Court, the Court did not find him credible in terms of his representations and therefore denies the motion to withdraw the guilty plea.

*Id.* at 47-48. The parties proceeded to sentencing, and the trial court sentenced Mandujano to eighteen years executed in the DOC.

[10] Mandujano now appeals.

# Discussion and Decision

[11] Mandujano contends that the trial court erred in denying his motion to withdraw his guilty plea. Motions to withdraw guilty pleas are governed by Indiana Code section 35-35-1-4. After the plea of guilty but before sentencing, a court may grant the motion for "any fair or just reason." Ind. Code § 35-35-1-4(b). However, the court is required to grant the motion to prevent "manifest injustice" and is required to deny the motion when the State would be "substantially prejudiced." *Id.* The defendant bears the burden of establishing his grounds for relief by a preponderance of the evidence. I.C. § 35-35-1-4(e).

[12] Upon appeal, the trial court's ruling on a motion to withdraw a guilty plea arrives in this Court with a presumption in favor of the ruling. *Smallwood v. State*, 773 N.E.2d 259, 264 (Ind. 2002). The trial court's decision is reviewed for abuse of discretion. I.C. § 35-35-1-4(b). We will not disturb the court's ruling where it was based on conflicting evidence. *Smallwood*, 773 N.E.2d at 264. In determining whether a trial court has abused its discretion in denying a motion to withdraw a guilty plea, we examine the defendant's statements at his

guilty-plea hearing to decide whether his plea was offered "freely and knowingly." *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001).

[13]   Mandujano claims that a manifest injustice occurred in this case because he wrote letters to the trial court expressing displeasure with his trial counsel *before* he pled guilty; therefore, the trial court was "on notice" that he had "serious complaints with the representation of his attorney." Appellant's Br. p. 11. In light of this evidence,[5] Mandujano's argument continues, "much more was required of the trial court" in accepting his guilty plea. *Id.* at 13.

[14]   We, however, agree with the trial court that no manifest injustice occurred and that this was instead a case of "buyer's remorse."[6] At the guilty-plea hearing, which was *after* Mandujano wrote the letters to the trial court and *while* he was under oath, the trial court asked Mandujano if he was satisfied with the services of his lawyer. Mandujano said, "Yes, sir." The trial court then asked Mandujano if he thought his lawyer should have done something for him that she did not do. Mandujano said, "No, sir." The trial court also carefully and thoroughly discussed the rights that Mandujano was waiving by pleading guilty

---

[5] There are three plea agreements in this case, since there are three case numbers. Appellant's App. p. 65-67, 110-12, 143-45. Each plea agreement covers all three cases. Mandujano points out that for two of the plea agreements, Mandujano's initials are missing from Numbers 11 and 13. *Id.* at 67, 112. In light of the fully completed plea agreement and the trial court's questions at the guilty-plea hearing, we do not find this to be problematic. *See id.* at 63 (form that trial judge initials ensuring that judge fully explains each of the rights that the defendant is waiving).

[6] The trial court also determined that the State would be substantially prejudiced by "having to potentially re-open those cases as well as having witnesses travel from Texas bearing the expense of having them here the first time . . . ." *See* Tr. p. 46. Notably, Mandujano does not respond to this finding by the trial court.

as well as the charges that Mandujano was pleading guilty to. *See* Tr. p. 2-19, 11 ("Now, Mr. Mandujano, I've gone through the terms of the plea agreement as I understand them. But this is your life. It's your freedom that's at stake. So, [what] I want to make sure is . . . your understanding of the terms of the agreement?"). Specifically, the trial court asked Mandujano if his plea was of his "own free will," and Mandujano said yes. *Id.* at 16. The court also asked Mandujano if there were any force, threats, or promises used to get him to plead guilty, and Mandujano said no. *Id*. In addition, Mandujano agreed with the factual basis that the State established for each of the offenses because he was "guilty." When the trial court gave Mandujano one last chance, Mandujano confirmed that he wanted the trial court to his accept his plea. The court concluded that Mandujano knowingly and voluntarily waived his rights. The trial court was not required to do anymore.

[15] But at the hearing on his motion to withdraw his guilty plea approximately three weeks later, Mandujano painted a very different picture, accusing his trial counsel of not doing what he asked her to do. He told the trial court that he addressed this issue in his letters to the court.[7] *Id.* at 33. The trial court listened to both Mandujano and trial counsel and determined that Mandujano was not credible. The trial court reasonably determined that Mandujano knowingly and

---

[7] Trial counsel explained to the court that she forwarded Mandujano's May 2014 letter to Bob Hill and her supervisor at the Marion County Public Defender's Office, and given the work she had performed on Mandujano's case, they determined that Mandujano was not entitled to conflict counsel. *See* Appellant's App. p. 102; Tr. p. 33-34.

voluntarily waived his rights at the guilty-plea hearing and only sought to withdraw his guilty plea because of "buyer's remorse." Accordingly, the trial court did not abuse its discretion in denying Mandujano's motion to withdraw his guilty plea.

[16] Affirmed.

Kirsch, J., and Bradford, J., concur.